IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 99-21170

A.J. BERTULLI; JOE GRINDER; LARRY DOURIS;
JOAN SANDSTROME; MARC BLACKMORE,

Plaintiffs-Appellees,

versus

INDEPENDENT ASSOCIATION OF CONTINENTAL PILOTS;
CONTINENTAL AIRLINES,

Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Texas

February 13, 2001

Before HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Pilots filed this class action against their pilots' association and airline claiming injury suffered as a result of seniority lost when the pilots' association and airline changed the seniority rankings of their pilots. The class was certified under Rule 23(b)(3).[1] Defendants appeal the certification order under Rule 23(f).[2]

---

[1] Fed. R. Civ. P. 23(b)(3) (2000).

[2] Fed. R. Civ. P. 23(f) (2000).

The pilots' association and airline argue that the plaintiffs lack standing and that the certification of the class was an abuse of discretion. We hold that standing is reviewable in a Rule 23(f) interlocutory appeal, that the plaintiffs have standing, and that the certification of the class was not an abuse of discretion.

I

Plaintiffs are pilots for Continental Airlines. They filed suit against the defendants, Continental Airlines and the Independent Association of Continental Pilots, alleging that the Pilots' Association violated its duties under the Railway Labor Act[3] and the Labor-Management Reporting and Disclosure Act.[4] The plaintiffs claim that they were injured when they lost seniority after the Pilots' Association and Continental Airlines agreed to restore the seniority of eleven pilots who had lost their seniority when they participated in a strike in 1983-85. The plaintiff class is composed of all Continental pilots whose seniority fell as a result of the action by the Pilots' Association; the class is alleged to number more than 1,700 pilots. Each class member's seniority rank fell by between one and eleven. The loss of seniority harmed plaintiffs, they claim, because seniority determines the priority of a pilot's bid for a particular work

---

[3] 45 U.S.C.A. § 151 *et seq.* (2000). The RLA applies to airlines. 45 U.S.C.A. § 181.

[4] 29 U.S.C.A. § 411 *et seq.* (2000).

assignment. Assignments differ in terms of pay, benefits, and choice of routes and schedules.

Plaintiffs describe two violations of statutory duties. First, they claim that the Pilots' Association violated the LMRDA when it denied the pilots their right to vote on the changes in seniority that the Pilots' Association negotiated with Continental. Second, they claim that the Pilots' Association violated its duty of fair representation under the RLA because the seniority action was arbitrary, discriminatory, or in bad faith.[5] Plaintiffs seek back pay and injunctive relief to undo the change in seniority.[6]

## II

Defendants first argue that plaintiffs lack standing to bring this suit. We note, initially, that under Rule 23(f), a party may appeal only the issue of class certification; no other issues may be raised.[7] Standing, however, goes to the constitutional power of a federal court to entertain an action,[8] and this court has the

---

[5] *See Shea v. Int'l Ass'n of Machinists and Aerospace Workers*, 154 F.3d 508, 512 (5th Cir. 1998).

[6] The LMRDA authorizes "relief (including injunctions) as may be appropriate." 29 U.S.C.A. § 412. Courts have interpreted the RLA to include the implied duty of fair representation and have held that violation of this duty is susceptible to "the usual judicial remedies of injunction and award of damages." *Shea*, 154 F.3d at 512.

[7] *See* Fed. R. Civ. P. 23(f) (providing for appeal of certification orders); 28 U.S.C.A. § 1291 (2000) (stating general rule that only final judgments may be appealed); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (holding that class certification cannot involve inquiry into the merits).

[8] *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992).

duty to determine whether standing exists even if not raised by the parties.[9] As we have held, "[t]his constitutional threshold must be met before any consideration of the typicality of claims or commonality of issues required for procedural reasons by [Rule] 23."[10] Standing is an inherent prerequisite to the class certification inquiry; thus, despite the limited nature of a Rule 23(f) appeal, defendants can raise the issue of standing before this court.[11]

In addressing the merits of this claim, we begin with *Lujan v. Defenders of Wildlife*,[12] which describes the "irreducible constitutional minimum of standing": (1) injury-in-fact, (2) causation, and (3) redressability.[13] Defendants argue that the

---

[9] *Christoff v. Bergeron Indus., Inc.*, 748 F.2d 297, 298 (5th Cir. 1984) (duty to determine subject matter jurisdiction); *see also Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Unless [the class representatives] can thus demonstrate the requisite case or controversy between themselves personally and respondents, 'none may seek relief on behalf of himself or any other member of the class.'").

[10] *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. Unit A 1981).

[11] The Eleventh Circuit has recently reached this same conclusion. *See Carter v. West Publishing Co.*, 225 F.3d 1258, 1262 (11th Cir. 2000). This circuit recently considered standing in an interlocutory appeal from a class certification, although under a different procedural posture. *See Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 265-68 (5th Cir. 2000), *cert. denied*, 120 S. Ct. 2718 (2000). The appeal in *Washington* was brought under 28 U.S.C. § 1292(b), not Rule 23(f), so it was not limited to issues of class certification. *Id.* at 265; *see also Washington v. CSC Credit Servs., Inc.*, 180 F.R.D. 309 (E.D. La. 1998) (certifying for appeal "all issues fairly presented" in the court's order).

[12] 504 U.S. 555 (1992).

[13] *Id.* at 560-61.

4

named plaintiffs have not suffered any injury-in-fact.[14] Defendants argue that they presented uncontroverted evidence that the challenged seniority changes did not affect the named plaintiffs' abilities to get the work assignments they desired; each plaintiff has received the assignments bid for. Thus, defendants argue, plaintiffs have demonstrated no monetary loss and lack standing.

This cramped view misunderstands standing. First, injury need not be monetary or tangible; even psychological or aesthetic injury is sufficient.[15] What courts require, however, is that the injury be personal.[16] Loss of seniority is an injury within a commonsense understanding of the term, and one that is suffered by the plaintiffs themselves. It carries with it the possibility of several forms of concrete injury, such as slower promotion, greater likelihood of being laid off, and lower benefits.[17] This circuit has entertained RLA actions regarding seniority decisions by unions.[18]

---

[14] Causation and redressability are easily met by the plaintiffs' allegations and evidence that the defendants' actions caused their loss of seniority, and that the relief sought would remedy the harm. Also, this case does not implicate any of the prudential limitations on standing. *See Allen v. Wright*, 468 U.S. 737, 751 (1984) (describing prudential limits on standing).

[15] *See Defenders of Wildlife*, 504 U.S. at 562-63.

[16] *See id.* at 563.

[17] In addition, of course, to the possibility that plaintiffs' bidding for routes would be affected.

[18] *See Rogers v. Air Line Pilots Ass'n, Int'l*, 988 F.2d 607 (5th Cir. 1993). The defendants cite to a Seventh Circuit case, *Rakestraw v. United Airlines, Inc.*, 981 F.2d 1524 (7th Cir. 1992), claiming that a loss of seniority is not an injury for which a plaintiff pilot can seek relief. They misread *Rakestraw*. The Seventh Circuit stated, "[Our precedent] holds that a union may

5

Second, the statutory violations that plaintiffs claim describe two specific injuries: first, loss of "fair representation" under the RLA; second, loss of voting rights under the LMRDA. These are "procedural rights" protected by statute, the loss of which is itself an injury without any requirement of a showing of further injury.[19] *Defenders of Wildlife* describes, as examples of procedural rights, the right to a hearing prior to deprivation or the right to an agency completing an environmental impact statement before beginning a project.[20] The loss is not merely the subsequent deprivation, but the right not to suffer a deprivation without proper process. In this case, the plaintiffs allege that the Pilots' Association deprived them of seniority without a vote and without the Pilots' Association fairly representing them.

Plaintiffs have standing.

### III

We review the district court's certification decision for abuse of discretion.[21] A class should be certified on a claim-by-

---

not juggle the seniority roster for no reason other than to advance one group of employees over another." *Id.* at 1534. The union's duty of fair representation constrains its ability to alter seniority rankings. *See id.*

[19] *See Defenders of Wildlife*, 504 U.S. at 572 n.7.

[20] *See id.* at 572 & n.7.

[21] *See Pederson v. Louisiana State Univ.*, 213 F.3d 858, 866 (5th Cir. 2000).

claim basis;[22] thus, we consider the RLA and LMRDA claims independently under each requirement for certification.

*Composition of the Class*

Defendants first argue that the class definition is underinclusive for the LMRDA claim.[23] Plaintiffs allege a denial of the pilots' right to vote on the seniority change. Since all Continental pilots have a procedural right to vote protected by the LMRDA, the district court could have defined the class to include all Continental pilots. But the district court may choose one possible class definition over another in order to ensure that the requirements of Rule 23 are best satisfied.[24]

Although all Continental pilots have allegedly been deprived of the right to vote, not all the pilots have the same interest in rectifying that deprivation. If the district court had included all Continental pilots in the class, the class would have included pilots with interests antagonistic to each other: pilots, like the named plaintiffs, who want to vote because they lost seniority; and pilots whose seniority increased as a result of the defendants' action, and who thus benefitted from the action taken without a

---

[22] *See Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 976 (5th Cir. 2000).

[23] Defendants do not challenge the LRA claim on this basis.

[24] *See* Fed. R. Civ. P. 23(c)(4) (2000); *Lundquist v. Security Pacific Automotive Fin. Servs. Corp.*, 993 F.2d 11, 14 (2d Cir. 1993) (noting that "the court is empowered under Rule 23(c)(4) to carve out an appropriate class—including the construction of subclasses," but that the court "is not obligated to implement Rule 23(c)(4) on its own initiative").

vote.  By defining the class to include only those pilots who also suffered a loss of seniority, the district court ensured that the class maintained a degree of cohesion, a commonality of interest, that a broader class may have lacked.

Further, the interests of the members of the class and those excluded from the class definition are sufficiently distinct to justify the line drawn.  While all pilots can claim a loss of procedural rights, those not in the class have no other injury. Drawing the class lines short of persons with no claim for loss of benefits was not an abuse of discretion.[25]


*Rule 23(a)(1): Numerosity*

Defendants argue that both claims fail the numerosity requirement for the same reason: since only eleven pilots had their seniority restored, only eleven class members could possibly have lost work assignments because of their lower seniority.  If only eleven pilots were harmed, defendants reason, the class is not sufficiently numerous to merit class treatment.

This argument fails on its own terms.  Restoring a single pilot's seniority could cause many pilots to lose their preferred routes.  If one pilot is forced to accept her second-choice route, she may in turn displace from that route another, less senior pilot who in turn must take his second-choice route, and so on.  A loss

---

[25] We note that non-members of the class remain free to assert their rights as they see fit.

of preferred routes could thus cascade all the way down the seniority list.

Moreover, the injury to the class members is not merely loss of a specific work assignment or an identifiable sum of money; loss of seniority is itself a harm, as we explained in finding that the plaintiffs have standing. The district court reasonably concluded that the class exceeded 1,700 members.[26] Defendants make no claim that this figure is not sufficiently numerous for class treatment.

*Rule 23(a)(2): Commonality*

"The threshold of 'commonality' is not high"[27] and is met in this case for both claims. Each claim describes common issues of law and fact.

Regarding the RLA claim, all the plaintiffs were harmed by a single action taken by the Pilots' Association, the decision to reinstate the seniority of eleven pilots. The RLA claim alleges that this action violated the Pilots' Association's duty of fair representation to the plaintiffs as a group. Resolution of any disputed facts surrounding the action taken by the Pilots' Association, and any factual and legal questions regarding whether

---

[26] Defendants also claim that since bidding is conducted within distinct groupings of pilots called "subbases," only pilots who share a subbase with one of the eleven pilots whose seniority was restored could have been injured. There are thirty-one subbases. At best, this reduces the class to hundreds of plaintiffs, rather than in excess of 1,700. But the loss of seniority affected more than just bidding, and thus the district court did not clearly err in finding that the class numbered at least 1,700.

[27] *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

9

the Pilots' Association violated its duty of fair representation, will affect the entire class.[28]  The RLA claim presents common questions.[29]

Regarding the LMRDA claim, whether the defendants were required to allow the pilots to vote on the seniority change is a legal question common to all of the class members that depends not on their individual circumstances, but on the application of the statute[30] to the duties of the Pilots' Association under its constitution and the actions of the Pilots' Association and Continental Airlines.  The factual questions surrounding the decision of the Pilots' Association and Continental Airlines are

---

[28] The plaintiffs describe the following common issues for the RLA claim: (1) whether the Pilots' Association breached its duty of fair representation by making the seniority changes arbitrarily; (2) whether the Pilots' Association breached its duty of fair representation by making the changes for discriminatory purposes; (3) whether the Pilots' Association breached its duty of fair representation by making the changes in bad faith; and (4) the methodology for calculating back pay.

[29] *See  Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 625 (5th Cir. 1999).  Defendants also argue that common issues do not unite the class, because some members are pilots who worked during the strike, and others are pilots who joined Continental after the strike.  This argument goes to the merits of plaintiffs' allegation that the Pilots' Association acted in bad faith to punish pilots who worked during the strike, not to the propriety of certification.  We do not consider the merits of a case when reviewing class certification.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  The existence of this difference between class members does not erase the common issues that do exist.

[30] 29 U.S.C.A. § 411(a)(1).

common issues for the entire class.[31]  The LMRDA claim presents common questions.

*Rule 23(a)(3) & (4): Typicality and Adequacy*

Defendants assert, for both the RLA and LMRDA claims, that the class representatives are not typical or adequate because they suffered no injury.  Again, the class representatives have suffered an injury, loss of seniority, that is the same injury suffered by the rest of the class.

Some class members may have lost work assignments, pay, and other benefits.  But differences in the extent of injury between class representatives and unnamed class members does not defeat certification in this case.  First, if we accept the defendants' argument that only eleven class members lost work assignments, the class representatives are typical of the remaining 1,700 or so class members whose only injury at this point is loss of seniority.  Second, although some theories about damages may differ, all

---

[31] The plaintiffs describe the following common issues for the LMRDA claim: (1) whether the Pilots' Association constitution and by-laws granted the pilots a right to vote on the seniority change; (2) whether the union interpreted its constitution in good faith before ordering the changes without a vote; (3) whether any interpretation of the constitution not to require a vote was patently unreasonable; (4) whether the pilots were allowed to vote; and (5) the methodology for calculating back pay.

11

plaintiffs share the same theories of liability.[32]   The district court did not abuse its discretion in finding typicality.

Nor did the district court abuse its discretion in finding the representatives to be adequate.   The class representatives' interests are aligned, not antagonistic, to the unnamed class members.[33]   Further, since this is a 23(b)(3) class, dissatisfied class members have the right to opt out of the class.[34]

*Rule 23(b)(3): Predominance and Superiority*

Defendants argue that common issues do not predominate because damages under both the RLA and LMRDA must be calculated in a highly individualized manner.   They further argue that a class action is not superior for either claim.   Rule 23(b)(3) lists some of the considerations the predominance and superiority inquiries should include.   They are "(A) the interest of members of the class in individually controlling . . . separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in

---

[32] *See Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986) ("The 'typicality' requirement focuses less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims.").

[33] *See Mullen*, 186 F.3d at 625-26.   Restoration of seniority would benefit the entire class; the class representatives do not seek relief at the expense of unnamed class members.

[34] *See* Fed. R. Civ. P. 23(c)(2); *Jenkins*, 782 F.2d at 472 n.5.

12

the particular forum; (D) the difficulties likely to be encountered in the management of a class action."[35]

Regarding predominance, defendants argue that the necessity of individualized inquiry into each plaintiff's injury to determine damages means that individual issues predominate over class issues. Although calculating damages will require some individualized determinations, it appears that virtually every issue prior to damages is a common issue. The plaintiffs' suit boils down to one basic factual claim: the Pilots' Association took a single act that caused every plaintiff to lose seniority. Every aspect of liability in the case involves this common issue.[36] Further, not all of the relief requires individualized determination. Injunctive relief undoing the restoration of the eleven pilots' seniority levels requires no individualized determinations, except for the recalculation of seniority rankings by the defendants.[37]

Determining damages may require the district court to reconsider class treatment of damages, but given the great significance of common issues in this case, we find no abuse of

---

[35] Fed. R. Civ. P. 23(b)(3). Placing the defendants' arguments within the framework these factors provide, we see that defendants focus their attention on (A) and (D). There is no litigation already commenced in other forums, and the defendants identify nothing about the particular forum that makes it undesirable.

[36] *Cf. Mullen*, 186 F.3d at 626-27 (affirming certification when most, but not all, liability issues are common). As noted above, this central claim breaks down into numerous common issues of fact and law. *See* notes 28, 31.

[37] Another consideration in favor of finding predominance is that if the defendants prevail on the liability issues, damages will be moot. *See Mullen*, 186 F.3d at 626.

13

discretion in the district court's determination that common issues predominated.[38]

Regarding superiority, defendants argue that the interests of class members in individual actions and the unmanageability of the class means this class fails the superiority requirement. They argue that (1) substantial potential damages make individual actions under both claims feasible, (2) the availability of attorney's fees under the LMRDA claim makes individual actions under that claim feasible, and (3) individualized calculation of damages makes a class action unmanageable.[39]

The damages that most members of the class would be entitled to seek are small. According to the plaintiffs, some class members may be entitled to damages of about $29,000 in back pay for lost work assignments,[40] but for the vast majority of plaintiffs, their only damages stem from loss of seniority itself and not lost work assignments. For them, damages will be nominal and their primary relief will be injunctive. A large group of plaintiffs, each with small damages, seeking injunctive relief that benefits the group as a whole, is the prototypical class.

---

[38] "In order to 'predominate,' common issues must constitute a significant part of the individual cases." *Mullen*, 186 F.3d at 626 (quoting *Jenkins*, 782 F.2d at 472).

[39] They also argue that the class device cannot be superior because the named plaintiffs have suffered no injury. This final iteration of the standing argument fails because, as we have explained above, the plaintiffs have suffered an injury, and the plaintiffs share that injury with the class.

[40] Defendants dispute whether any members of the class would be entitled to back pay.

Likewise, regarding the LMRDA claim, attorney's fees do not alter the relatively low damages most plaintiffs would receive nor the significance of injunctive relief to the entire class. Defendants essentially argue that the potential for significant damages and the presence of attorney's fees under the LMRDA makes individual actions feasible. But the feasibility of individual actions does not undercut the conclusion that the class device is superior. In order to demonstrate that the district court's finding of superiority was an abuse of discretion, defendants must not merely show that individual actions are *feasible*; they must show that individual class members have an interest sufficient to make individual actions *desirable*.

Regarding the manageability of the class action, there is a possibility that some damages calculations would be burdensome. But the economies of class treatment of the numerous common issues weigh in favor of class treatment. We cannot find that the district court abused its discretion in finding certification to be superior for both claims.

IV

The district court did not abuse its discretion in certifying the class with respect to the RLA claim or the LMRDA claim. We AFFIRM the district court's certification of the class.

15