**PIGGLY WIGGLY CLARKSVILLE, INC., et al., Plaintiffs,**

v.

**INTERSTATE BRANDS CORPORATION, Defendant.**

Civil Action No. 3:96–CV–51.

United States District Court, E.D. Texas, Paris Division.

June 6, 2003.

John Brown Baldwin, of Baldwin & Baldwin, Marshall, TX, David J. Manogue, of Specter Law Offices, Pittsburgh, PA, Steven Alan Kanner, of Much, Shelist, Freed, Denenberg, Ament & Rubensteinein, Chicago, IL, Jim D. Lovett, of Jim, D. Lovett & Associates, Clarksville, TX, Isaac L. Diel, Todd R. Seelman, Victoria, TX, Thomas H. Brill, Leawood, KS, Vernon N. Reaser, Jr.,

Victoria, TX, for Piggly Wiggly Clarksville, Inc.

Francis Scott, Baldwin, Sr., John Brown Baldwin, of Baldwin & Baldwin, Marshall, TX, David E. Sharp, of Greenberg, Peden, Siegmyer & Oshman, Houston, TX, Joseph B. Cox, Jr. of Cox and Cox, Raleigh, NC, Isaac L. Diel, Todd R. Seelman, Victoria, TX, Thomas H. Brill, Leawood, KS, Vernon N. Reaser, Jr., Victoria, TX, for Abraham's Food Town Inc., Staggers Oil Company of Texas, Staggers Oil Company of Louisiana, Judy Whatley, and Coochie's Inc.

John Brown Baldwin, of Baldwin & Baldwin, Marshall, TX, Michael A. Havard, of Provost & Umphrey, Beaumont, TX, Paul E. Slater, of Sperling, Slater & Spitz, Chicago, IL, Isaac L. Diel, Todd R. Seelman, Victoria, TX, Thomas H. Brill, Leawood, KS, Vernon N. Reaser, Jr., Victoria, TX, for E.E. Kaine and Dandy Doodle, Inc.

Jerry Lynn Beane, of Strasburger & Price, LLP, Dallas, TX, for Defendants.

*MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION*

SCHELL, District Judge.

This matter is before the court on "Plaintiffs' Motion for Class Certification" filed on February 2, 1998 (Dkt.# 27).[1] A hearing on class certification was held on April 15, 1998. Subsequently, additional briefing in support and in opposition was filed. Upon consideration of the briefing, hearing, and applicable law, the court is of the opinion that the motion for class certification should be DENIED.

I. *Background*

This is a civil antitrust class action in which Piggly Wiggly Clarksville, Inc. ("Piggly Wiggly"), Abraham's Food Town, Inc., Staggers Oil Company of Texas, and Stag-

gers Oil Company of Louisiana ("the class representatives"), on behalf of themselves and all others similarly situated, allege that Interstate Brands Corporation ("Defendant" or "Interstate") through its predecessor Continental Baking Company ("CBC"), conspired with its competitors in the bakery industry to fix the prices of bread and cake products in the State of Texas and designated areas of Louisiana. The facts and procedural history of this case are outlined in *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 83 F.Supp.2d 781 (E.D.Tex.2000).

The Plaintiffs' claim advanced in this case is that Interstate violated § 1 of the Sherman Antitrust Act, Title 15 U.S.C. § 1, by conspiring with its competitors to fix the prices of bread and cake products throughout Texas and various parts of Louisiana.[2] Plaintiffs also assert that Interstate fraudulently concealed its illegal activities to avoid detection. The price-fixing conspiracy allegedly began in January 1977 and continued through March 1993. Plaintiffs have filed this motion for class certification in which they seek to represent a class of direct purchasers of cake products in Texas and bread and cake products in Louisiana.

*a. Class Certification History*

Plaintiffs initially filed their motion for class certification on February 2, 1998. In the Motion for Class Certification, Plaintiffs sought to certify a class consisting of:

All individuals and entities (including independent school districts, state, county and city independent school districts, and local governmental entities, but excluding all other state and federal governmental entities, and Interstate, Mrs. Baird's, Campbell Taggart and Flowers and/or other Bread Products producers and their respective subsidiaries and affiliates) who purchased Bread Products[3] in the State of Texas and contiguous market areas, including the cities and surrounding market-

---

1. The court GRANTS the "Plaintiffs' Motion to Amend Class Definition" filed on March 8, 2000 (Dkt.# 93).

2. Initially, the Plaintiffs also brought claims under Texas anti-trust law. However, these claims have since been dropped.

3. "Bread Products" is defined as all breads, rolls, cakes and dessert items.

ing areas of Shreveport, Louisiana; Texarkana, Arkansas; Roswell, New Mexico; and Hugo and Lawton, Oklahoma,[4] directly from Interstate and any co-conspirators and any distributor,[5] subsidiary or affiliate thereof, at any time during the period from and including January 1, 1977 to and including March 28, 1996 (the "Class Period") and/or asserted or could have asserted claims against Interstate or any co-conspirators based on purchases of Bread Products during the Class Period.

Since the time this motion was filed, much has happened that has affected the class definition and the class certification issues. After numerous briefs were filed and the class certification hearing was held in which additional briefing was ordered, this case came before the court on a motion for summary judgment. The Defendant moved for summary judgment claiming that all of Plaintiffs' claims were barred by res judicata and/or collateral estoppel. That motion was granted in part and denied in part by order of this court on February 10, 2000. *See Piggly Wiggly*, 83 F.Supp.2d at 800–801. Subsequent to that order, the parties filed additional briefing on the class certification issues and Plaintiffs filed a motion to amend the class definition in order to comply with the summary judgment order and the discussions during the class certification hearing. In their Motion to Amend the Class Definition, the Plaintiffs now seek to certify a class consisting of:

All direct purchasers of cake products (including all sweet goods, snack cakes, pies, doughnuts, and danishes) in the State of Texas and bread and cake products (including all white bread, wheat bread, variety or specialty breads, hot dog buns, hamburger and other sandwich buns, rolls, sweet goods, snack cakes, pies, doughnuts, and danishes) in the Shreveport, Louisiana area (limited to[6] the parishes of Bossier, Caddo, Clairborne, Desoto, Webster, Union, Lincoln, Morehouse, Ouachita, Franklin and Red River) from Interstate Brands Corporation, Continental Baking Company, Cotton Holsum Baking Company, Mrs. Baird's Bakeries, Inc., Flowers Baking Co. of Texas (including its distributors) or Campbell Taggart Baking Companies, Inc. (including their predecessors, successors, subsidiaries and affiliates) at any time during the period January 1, 1977 to March 31, 1993. Excluded from this class definition are federal governmental entities, thrift store purchasers, Interstate Brands Corporations, Continental Baking Company, Cotton Holsum Baking Company, Mrs. Baird's Bakeries, Inc., Flowers Baking Co. of Texas, and Cambell Taggart Baking Companies, Inc. (including their predecessors, successors, subsidiaries and affiliates and assigns).

This amended class definition removes Plaintiffs' claim as to bread products in Texas, all claims of New Mexico, Arkansas, and Oklahoma purchasers, shortens the class period from 1996 to 1993, and removes claims as to thrift store purchasers. The amended class definition, in accordance with the court's summary judgment order, leaves remaining viable claims as to cake products in Texas and bread and cake products in Louisiana, limited to the parishes contained in the class definition (including wholesale price list and bid purchasers).

Prior to the class certification hearing, Defendant filed a notice of position on class certification. In the notice, Defendant con-

---

4. The contiguous areas around the cities described above consist of the following: McCurtain, Pushmataha, Choctaw, Atoka, Coal, Bryan, Johnson, Marshall, Jackson and Tillman Counties, Oklahoma; Sevier, Little River, Howard, Pike, Hempstead, Lafayette, Clark, Nevada, Columbia, Union, and Miller Counties, Arkansas; Bossier, Caddo, Clairborne, Union, Lincoln, Morehouse, Ouachita, Franklin, Red River, Desoto, and Webster Parishes, Louisiana; Dona Ana, Luna, Grant, Hidalgo, Sierra, Otero, Lincoln, Chares, Curry, Lea and Roosevelt Counties, New Mexico.

5. With respect to Flowers, "distributor" means any person or entity which sold bread during the relevant period pursuant to a Distributor's Agreement.

6. Initially, Plaintiffs' amended class definition contained the word "including" instead of "limited to", however, subsequent to filing their Motion to Amend the Class Definition, Plaintiffs filed additional briefing in response to briefing by the Defendant which changed "including" to "limited to".

ceded that it would not object to the following class of plaintiffs:

> All entities and persons (excluding purchasers from thrift stores, independent school districts, governmental entities, Interstate Brands Corporation, Continental Baking Company, and other producers of Bread Products) in the State of Texas who purchased Bread Products [7] directly from Continental Baking Company, Mrs. Baird's Bakeries Inc., Campbell Taggart, Inc., Flowers Baking Co. or Flowers Baking Co. of Tyler pursuant to commercial wholesale price lists at any time during the period of January 1, 1986 to March 31, 1993.[8]

After comparing the Plaintiffs' proposed class definition and the class definition filed by the Defendant, the points of contention between the parties can be easily recognized. The disputed issues, in addition to Defendant's remaining arguments against class certification, are as follows:

1) Customers that purchased through a bidding process (including school districts and local government entities);

2) The class period (whether the class should begin in 1977 or 1986);

3) Cake products; and

4) Louisiana purchasers.

Defendant's position is that these additional issues broaden the class definition and cause this case to be inappropriate for class certification. Specifically, Defendant argues that the inclusion of bid purchasers will cause individual issues to predominate and cause the class representatives' claims to be atypical of the remaining class members, that the class period is inappropriate because the Plaintiffs have no possibility of proving a conspiracy prior to 1986 because Interstate does not have records prior to 1986, and that cake purchasers and Louisiana purchasers add additional issues that cause individual issues to predominate and makes the class unmanageable. In order to determine whether the Plaintiffs' proposed class can be certified under Rule 23(b)(3), this court must look to the specific facts of this case in relation to the bakery industry as a whole to assess whether common questions of law or fact predominate over individual questions and whether trial as a class action is superior to other methods for fair and efficient adjudication of this controversy.

### b. The Bakery Industry

As mandated by the Fifth Circuit in *Alabama v. Blue Bird Body, Co.*, 573 F.2d 309 (5th Cir.1978), the court must look at the industry in which the price fixing conspiracy is alleged and attempt to understand the products, the sellers, and the buyers in determining if the proposed class is appropriate for class certification. *See Id.* at 312.[9]

In this case, the proposed class of plaintiffs includes those within the state of Texas and the Louisiana parishes of Bossier, Caddo, Clairborne, Desoto, Webster, Union, Lincoln, Morehouse, Ouachita, Franklin and Red River. Therefore, the discussion of the bakery industry will focus on the industry as it relates to this geographic area. Additionally, the proposed class period is from 1977 to 1993, therefore, the discussion will be limited to the industry during that period.

The bakery industry in Texas has been dominated by Mrs. Baird's since before 1977. Unlike Texas, Mrs. Baird's was not the market leader in the Louisiana bread market.[10] In addition to Mrs. Baird's, many other companies also produced and marketed bread and cake products in Texas and Louisiana during this time period. Included in this group were Interstate, Campbell Taggart,

---

7. "Bread Products" consist of white bread, wheat bread, variety or specialty breads, hot dog buns, hamburger and other sandwich buns, and rolls.

8. Defendant clarified at the class certification hearing that this class definition does not include bid purchasers.

9. The information concerning the bakery industry is a compilation from the Plaintiffs' and Defendant's briefs regarding their positions on class certification. The court's recitation of the structure of the bakery industry takes into consideration both party's positions in an attempt to determine the actual structure of the industry.

10. None of the original Defendants had bakeries in Louisiana. The products produced in Texas by the Texas bakeries would be shipped to the Louisiana purchasers.

Flowers Baking Co. of Texas, Flowers Baking Co. of Tyler, Rainbo Baking Companies, Mrs. Boehme's Holsum Bakery, Inc., and other companies that operated off and on during the period of the proposed class.[11] Each of these companies marketed and sold bread and cake products under various trade names throughout the class period. For example, Interstate distributed its products under the brand names of "Wonder", "Hostess", "Bread du Jour", and "Homepride".

The products produced by these companies came in many different forms, however, they are all made primarily of flour, water, sugar, salt and yeast. From these few ingredients, many different products are produced. For example, Interstate produced over fifty-five different packaged bread items including, sandwich and regular sliced-bread (white and wheat), hamburger buns (regular, seeded and whole wheat in 4″ and 4½″ sizes), hot dog buns (regular, foot long, 10″ coney and "wiener buns"), kaiser rolls, poor boy buns, donuts, blueberry muffin loaves, honey buns, Ding–Dongs, Snowballs, fruit pies, Twinkies, cupcakes, brownies, crumb cakes, bran muffins, danish, and coffee cake. However, these specific product lines, such as white bread or "Twinkies", do not vary significantly from bakery to bakery. Or put more plainly, a Twinkie is a Twinkie whether it was made in Beaumont or El Paso, or whether it was made by Interstate or Mrs. Baird's. Additionally, there is no evidence before the court that customers purchased "special order" Twinkies or other items that were not available to all customers.[12] Customers simply purchased what was offered by the Defendant for sale. Thus, within each category or type of bread or cake product produced, the product is homogeneous.

An issue relevant to the Louisiana market is the classification of bread products. Bread and bread products are sold under one of three classifications: (1) "branded bread" is bread sold under the various bakeries' premium labels (for example, Interstate sold under

the name "Wonder"); (2) "private label bread" is bread marketed under a label owned by the bakery's customer, which is typically a large store or grocery chain (for example, Interstate would sell bread to Kroger and the packaging on the bread would bear the name "Kroger" and not "Wonder"); (3) "secondary label bread" is bread marketed under an unadvertised label owned by the bakery. Bread sold as private label bread was generally sold to large stores through a bid and negotiating process. As with all the products at issue in this case, the prices for these items varied depending upon the market and the location of the bakery and customer.

Most important to class certification in this case are the purchasing methods used in the bakery industry. After reviewing all of the parties briefing, the court has determined that two purchasing methods are primarily, if not exclusively, used to purchase bread and cake products. The first method of purchasing, used primarily by small grocery stores and convenience stores, is the practice of using "wholesale price lists". Under this method, the consumer would be presented with a wholesale price list containing the products produced and sold by a specific bakery. The customer would make its purchases based on the prices contained in the price list. The second purchasing method is a "bid purchasing" method in which bids are submitted by the bakeries to the various purchasers (large grocery store, school districts, and local government entities). Additionally, other discounts and special offers may have been available to certain customers.

The actual method through which the bid process operates is not agreed upon by the parties. The Plaintiffs' position is that the bid or negotiated price is based upon the wholesale price list from which the other customers purchase. More specifically, the Plaintiffs allege that bid prices are derived through a discount system in which the De-

---

**11.** All of these named companies, including Mrs. Baird's, were named defendants in this matter but have settled the Plaintiffs' claims against them. Interstate is the sole remaining defendant.

**12.** The exception to this might be private label or secondary label customers. However, these products are the same bread products that are produced and available to all customers. They simply have special pricing and packaging.

fendant companies submit a bid that is a percentage reduction off of the wholesale price list. For·example, under the Plaintiffs' theory, Interstate would submit a bid to a grocery store chain or school district for 20% off of the wholesale price. Thus, the wholesale price list is essential to the bid process under the Plaintiffs' model. The Defendant disagrees and says that the wholesale price list is not used in any manner in determining bid prices. For purposes of this motion, the court will assume that Plaintiffs' contention as to the use of the wholesale price lists in bid purchasing is factually accurate.

### c. Plaintiffs' Allegations

It their briefs, Plaintiffs clarify that they are alleging a single conspiracy to fix the prices of baked goods in Texas and Louisiana. Specifically, Plaintiffs allege in their complaint that Defendant and its co-conspirators:

(a) discussed prices being charged for bread and bread products sold to customers;

(b) agreed to raise, fix and maintain prices for bread and bread·products sold to customers;

(c) raised, fixed and maintained prices for bread and bread products sold to customers;

(d) directed subordinate employees to contact their counterparts and obtain support on general price increases for bread and bread products;

(e) discussed and agreed on general price increases for bread and bread products;

(f) approved and issued general price increases for bread and bread products to reflect their pricing agreements;

(g) monitored an enforced adherence to the prices for the bread and bread products to which they agreed;

(h) allocated customers in certain geographic locations among themselves and their co-conspirators to avoid free and open competition;

(i) agreed not to make bona fide attempts to obtain the business of a purchaser of bread that was purchasing bread from a competitor Defendant; and

(j) agreed to submit complimentary, noncompetitive bids or no bids to customers to effectuate and conceal their agreement.

Plaintiffs' theory, which they intend to prove through the use of class wide proof, is that all direct purchasers of bread and cake products in Texas and certain parishes in Louisiana were affected in some way by the price lists that contained "fixed" prices set at artificially high levels. Additionally, they allege that the bid purchasers and private label purchasers negotiated their prices from the same price lists and, therefore, were injured in the same fashion as the Plaintiffs that simply purchased directly off of the price lists. The common bond between the Plaintiffs is the alleged "fixed" wholesale price lists. In essence, under Plaintiffs' theory, all direct purchasers, including bid and wholesale price list purchasers, used or based their purchases on the same price lists. Accordingly, for a jury to find Interstate liable to any of the Plaintiffs, Plaintiffs will have to show that Interstate conspired to fix the prices of its bread and cake products on its wholesale price lists, and in order for a class including both bid and wholesale price list purchasers to be certified, this court would have to be convinced that a factual examination of individual transactions will not be necessary. Because the court concludes that the issues of each Plaintiff's damages and each Plaintiff's knowledge and due diligence will require some degree of individual factual examination, the motion for class certification must be denied.

## II. Federal Rule of Civil Procedure 23

Plaintiffs have moved for class certification under Rule 23(b)(3). In addition to the requirements of that subsection, the requirements of Rule 23(a) must be met. The four Rule 23(a) requirements are:

(1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class).

*Mullen v. Treasure Chest Casino, L.L.C.*, 186 F.3d 620, 623 (5th Cir.1999).

In a recent decision, the Fifth Circuit Court of Appeals summarized the requirements of class certification:

> The party seeking certification bears the burden of demonstrating that the requirements of rule 23 have been met. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir.1998).
>
> The district court must conduct a "rigorous analysis of the Rule 23 prerequisites" before certifying a class. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). Among the four prerequisites of Rule 23(a) is the requirement that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Before a class may be maintained under rule 23(b)(3), a court must also determine that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that "a class is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The predominance and superiority requirements are "far more demanding" than is rule 23(a)(2)'s commonality requirement. *Amchem Prods. v. Windsor*, 521 U.S. 591, 624, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).
>
> Determining whether legal issues common to the class predominate over individual issues requires that the court inquire how the case will be tried. *Castano*, 84 F.3d at 744. This entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class. Although this inquiry does not resolve the case on its merits, it requires that the court look beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law." *Id.* at 744. Such an understanding prevents the class from degenerating into a series of individual trials.

*O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 737–38 (5th Cir.2003) (footnote omitted). "Given the plaintiffs' burden, a court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome." *Castano*, 84 F.3d at 742 (citing *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 70 (4th Cir.1977)). Furthermore, the need to individually calculate the damages of each plaintiff class member may be the sole basis for a court's denial of class certification. *See O'Sullivan*, 319 F.3d at 745 ("In light of the individual calculation of damages that is required, the district court abused its discretion in certifying the UPL claims."). With these legal principles in mind, the court with now consider the certification of the proposed class.

### a. Rule 23(a) Requirements

If the class is so numerous that joinder is impracticable, then the numerosity requirement is satisfied. Plaintiffs contend that there are over 52,000 potential class members. Defendant does not dispute that the numerosity requirement has been met. Cert. Hearing Trans. at 67. The court agrees.

■ Defendant disputes that Plaintiffs have satisfied their burden on commonality. Commonality does not require all issues to be common to every class member. *See Watson v. Shell Oil. Co.*, 979 F.2d 1014, 1022 (5th Cir.1992). Commonality is satisfied when there exists "at least one issue whose resolution will affect all or a significant number of the putative class members." *Forbush v. J.C. Penney Co.*, 994 F.2d 1101, 1106 (5th Cir.1993) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir.1982)). The threshold for commonality is not high. *See In re S. Cent. States Bakery Prods. Antitrust Litig.*, 86 F.R.D. 407, 415 (M.D.La.1980) (characterizing the commonality requirement as superfluous when class certification is sought under Rule 23(b)(3)). In the instant case, the alleged antitrust conspiracy and fraudulent concealment are common issues that will affect the claims of all potential class members. Furthermore, the issue of whether the wholesale price lists contained an artificially elevated price is central to all of the claims. Therefore, the commonality requirement has been satisfied.

■ Whether typicality has been satisfied is not as clear, nevertheless the court believes that it has been satisfied. The claims of class representatives are typical if they arise from the same practice or course of conduct that gives rise to the other class members and if the class representatives' claims are based on the same legal theory as the unnamed class members. Rule 23(a)(3) does not require perfectly identical claims. Rather, what is required is that the claims of the named plaintiffs be based on the same legal or remedial theory and that there be no conflict of interest between the class representatives and class members. *See Gonzales v. Cassidy*, 474 F.2d 67, 71 n. 7 (5th Cir. 1973). In the instant case, the Plaintiffs seek to recover from an alleged conspiracy involving the Defendant to fix prices. The central allegation is that the wholesale price lists contained illegally raised prices, and these price lists were used to sell products to the Plaintiff class members. The differing purchasing methods of the class members do not alter that legal or remedial theory. Based on that minimal requirement, the claims of the named Plaintiffs appear to be typical enough to satisfy the typicality requirement.

Rule 23(a)(4) requires that the class counsel and class representatives adequately represent the class members. To satisfy this requirement, the interests of the class representatives must not conflict with the interests of the class members and class counsel must be able to competently represent the class. In the instant case, the proposed class representatives' interests do not conflict in any way with the interests of the proposed class. The court does not find any of Defendant's arguments concerning the inadequacy of the class representatives to have merit. Additionally, the court is satisfied after reviewing the information submitted concerning the qualifications of class counsel that class counsel are well qualified to adequately represent the class. Therefore, the adequacy requirement has been met.

### b. *Rule 23(b)(3) Requirements*

■ The primary argument in opposition to class certification is that common issues to the class members do not predominate over the individual issues. In order to evaluate predominance the court must look to what the Plaintiffs will have to prove at trial and how they intend to present their case.

First, in order to prevail at trial on the federal antitrust claim, the Plaintiffs will have to establish by a preponderance of the evidence: (1) that the Defendant was involved in a combination or conspiracy to fix the prices of cake products in the State of Texas and bread and cake products in designated areas of Louisiana; (2) that the combination or conspiracy constituted an unreasonable restraint on interstate commerce; (3) that the restraint involved a substantial amount of interstate commerce; and (4) that the Plaintiffs suffered injury in his business or property as a proximate result of the alleged combination or conspiracy. *Fifth Circuit Pattern Jury Instructions: Civil*, § 6.1 (1999).

Plaintiffs contend that they will be able to present common, class-wide evidence of each of these elements. The court agrees that the first three requirements have been satisfied, but not the fourth as it relates to the actual damages suffered by each Plaintiff. Although proof of an antitrust *injury* can be shown by the common proof that each was in fact injured by the alleged conspiracy, the amount of *damages* resulting from that injury will require some degree of investigation into facts specific to each Plaintiff and potentially facts specific to each Plaintiff's numerous negotiations and transactions over the course of many years.

While damages in the antitrust context need not be proven with exact particularity, they may not be merely speculative. *See id.* The proposed class includes school districts and private label purchasers that used a bidding process to purchase from the alleged conspirators. It also includes small grocery stores and convenience stores that purchased directly off the allegedly fixed wholesale price lists. Even if the bidding process used by school districts and private label purchasers originally began with a wholesale price list that was fixed, the final price paid involved many factors including the amount of products purchased, the geographic market, the particular services included with each purchase, delivery costs, the discount negoti-

ated off the wholesale price list, and potentially the negotiating skills of the purchaser and the sales representative. *See* Certification Hearing Transcript, at 15–18, 33. Because of the many individualized factors that established what each Plaintiff actually paid, it will be impossible to present evidence in a common manner as to the price each Plaintiff would have paid but for the alleged conspiracy.

Predominance and manageability may be destroyed solely by the complexity of determining damages when that determination does not lend itself to a mathematical calculation that can be applied to all the class members. *See Windham v. Am. Brands, Inc.*, 565 F.2d 59, 67–68 (4th Cir.1977); *In re Beef Indus. Antitrust Litig.*, 1986 WL 8890, *1 (N.D.Tex.1986); *Dry Cleaning & Laundry Inst. of Detroit, Inc. v. Flom's Corp.*, 1993 WL 527928, *3 (E.D.Mich.1993). The lack of a generalized formula would result in countless mini-trials on the issue of damages if liability is first established.

Plaintiffs contend that there are a "number of methods" or "different methodologies" that may be utilized to prove damages in a class-wide manner. Certification Hearing Transcript, at 80–81. The mere assurances of counsel are not sufficient. *Castano*, 84 F.3d at 742. The court does not believe, given the numerous independent factors that go into both the price that should have been paid and the price that was actually paid, that there could be any general formula for calculating damages with precision, amounting to more than speculation, without requiring some degree of inquiry into the individual facts of 52,000 Plaintiffs and potentially thousands of transactions. Given the unique nature of the individual transactions, the court concludes that it is not reasonable to assume that a generalized formula can be created. *See* Certification Hearing Transcript, at 97 (Plaintiffs' counsel stating the standard for determining if a damage formula can be used).

The case at bar is analogous to the situation presented in *O'Sullivan*, where the Fifth Circuit reversed the district court's decision to certify a plaintiff class. 319 F.3d 732. In that case, the district court certified a class of plaintiffs who paid mortgage preparation fees to law firms selected by the defendant, a mortgage broker. The plaintiffs alleged that the defendant received kickbacks from the law firms in violation of federal and state statutes for referring business. *Id.* at 735. The court concluded that in order to determine liability the district court would have to focus on the damages involved in each allegedly improper transaction. *Id.* at 742. While this court's predominance and manageability focus is solely on the calculation of damages and not liability, the obstacle to certification is the same. Namely, the need to inquire into every transaction forming the basis of the underlying claim for relief. In *O'Sullivan*, the plaintiffs planned to present common evidence that the defendant's overall practice violated the state statute. *Id.* at 743. But common evidence could not be used to prove damages, and therefore, class certification was inappropriate: "Even though a class is theoretically certifiable on these issues, we find that an apportioned calculation of damages-required by the Texas UPL statute-means that individual issues predominate." *Id.* at 744 (citations omitted).

In the instant case, as in *O'Sullivan*, "the propriety of [Defendant's] practice can be determined on a class-wide basis, [but] the calculation of damages cannot." *See id.* at 745. "Where the plaintiffs' damage claims 'focus almost entirely on facts and issues specific to individuals rather than the class as a whole,' the potential exists that the class action may 'degenerate in practice into multiple lawsuits separately tried.'" *Id.* at 744 (quoting *Castano*, 84 F.3d at 745 n. 19) (citation omitted). "In such cases, class certification is inappropriate." *Id.* at 745. The court reaches the same conclusion in this case.

In addition to the predominance and manageability problems raised by the damages issue, the Plaintiffs rely on fraudulent concealment to avoid the potential bar of the statute of limitations. In order to prevail, Plaintiff will have to prove that the Defendant affirmatively concealed its actions and that Plaintiffs, despite the exercise of due diligence, did not have knowledge of the alleged conspiracy. *In re Beef Indus. Anti-*

trust Litig., 600 F.2d 1148, 1169 (5th Cir. 1979).

While the court recognizes that many other courts have determined that the issues presented by fraudulent concealment are more common than individualized, some degree of individual proof will be required. *See Hall v. Burger King Corp.*, 1992 372354, *15 n. 8 (S.D.Fla.1992) (collecting cases concluding that fraudulent concealment was a "highly individualized" factual inquiry that may not by established with common proof); *In re Lutheran Brotherhood Variable Ins. Prods. Co. Sales Practices Litig.*, 2002 WL 1023150, *3 (D.Minn.) ("[A]ny inquiry into fraudulent concealment is the sort of individualized inquiry that is inappropriate in a class action."); *Wagner v. Cent. La. Elec. Co.*, 99 F.R.D. 279, 289 (E.D.La.1983) ("The Court is unable to find that proof of failure to discover and due diligence can be established on a generalized basis."). The individual issues that will require inquiry into the knowledge and actions of each Plaintiff, when combined with the individual issues presented in determining damages, further persuade the court that common issues do not predominate in this proposed class action.

Fifth Circuit case law also suggests that individualized proof on the issue of fraudulent concealment will be necessary. *See Greenhaw v. Lubbock County Beverage*, 721 F.2d 1019, 1029–30 (5th Cir.1983). In *Greenhaw*, the court concluded that proof that *all* class members had no reason to exercise any due diligence because they were never put on notice of any conspiracy could not be inferred solely by proof of Defendant's actions in allegedly concealing its price fixing conspiracy. *Id.* Requiring each of the 52,000 Plaintiffs to testify and be cross-examined about their knowledge and due diligence raises the strong potential that the action will degenerate into a series of individual trials. This individualized proof must be added to the already individualized proof required in the damages phase of any future trial. When looking at the entire trial, common issues to the class no longer predominate and the class action becomes unmanageable.

The Fifth Circuit's ruling in *Sandwich Chef of Texas, Inc. v. Reliance National Indemnity Insurance Co.*, is analogous. 319 F.3d 205 (5th Cir.2003). In *Sandwich Chef*, the district court certified a plaintiff class action brought against numerous insurance companies for alleged RICO violations. The Court of Appeals reversed, finding that the individual issue of *each* plaintiff's reliance on alleged misrepresentations destroyed predominance of common issues and prevented class certification. *Id.* at 219–21. Reliance on the part of each plaintiff could not be proven by using common evidence, such as expert testimony that it is customary in the business to rely on such statements. *Id.* at 220–21. "The trier of fact must ultimately decide whether a specific [plaintiff] thought an invoice complied with the approved rate and paid an inflated premium in reliance on that belief." *Id.* at 221. It was the Plaintiffs' burden to prove reliance as an element of their RICO claim, and that proof would require some individual factual inquiry. Similarly in the instant case, it is the Plaintiffs' burden to establish the elements of fraudulent concealment and that inquiry will necessarily require more than common proof as to the actions of the Defendant and expert evidence as to what a similarly situated reasonable plaintiff would know and do. Therefore, class certification is not appropriate.

## III. Conclusion

Upon consideration of the extensive briefing, the class certification hearing, and the applicable law, the court is of the opinion that the Plaintiffs have not met their burden under Rule 23(b)(3). Therefore, the motion for class certification is hereby DENIED.

It is so ORDERED.