United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 7, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-40973
_____

PIGGLY WIGGLY CLARKSVILLE, INC., ET AL.,

                                        Plaintiffs,

PIGGLY WIGGLY CLARKSVILLE, INC.; ABRAHAM'S
FOOD TOWN, INC.; STAGGERS OIL COMPANY OF
LOUISIANA; DANDY DOODLE, INC., doing business
as Howdy Doody Food Store,

                                        Plaintiffs-Appellants,

versus

INTERSTATE BRANDS CORP., doing business as
Dolly Madison Bakery,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court for
the Eastern District of Texas
(USDC No. 3:96-CV-51)
_____

Before KING, Chief Judge, REAVLEY and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

_____

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should
not be published and is not precedent except under the limited circumstances set forth in
5TH CIR. R. 47.5.4.

Plaintiffs Piggly Wiggly Clarksville, Inc. et al. bring this interlocutory appeal of the district court order denying class certification under Rule 23(b)(3). We affirm.

"[T]he district court maintains great discretion in certifying and managing a class action. We will reverse a district court's decision to certify a class only upon a showing that the court abused its discretion, or that it applied incorrect legal standards in reaching its decision." Mullen v. Treasure Chest Casino, LLC, 186 F.3d 620, 624 (5th Cir. 1999) (citations omitted). The decision turns on the unique facts of each case. Bell Atlantic Corp. v. AT&T Corp., 339 F.3d 294, 301 (5th Cir. 2003).

The district court, in a cogent opinion, held that the predominance requirement of FED. R. CIV. P. 23(b)(3) was not met, because individualized proof would be required to establish the amount of damages as to each class member and whether each class member could take advantage of the fraudulent concealment doctrine to extend the limitations period. Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp., 215 F.R.D. 523, 528 (E.D. Tex. 2003). Rule 23(b)(3) provides that a class may be certified if, among other requirements, "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The district court applied the correct legal standards, and we cannot say that it abused its discretion in denying class certification.

A.    Calculation of Damages

2

The necessity of calculating damages on an individual basis, by itself, can be grounds for not certifying a class. Bell Atlantic, 339 F.3d at 308 (5th Cir. 2001) (holding that "class certification is not appropriate" because plaintiffs "failed to demonstrate that the calculation of individualized actual economic damages, if any, suffered by the class members can be performed in accordance with the predominance requirement of Rule 23(b)(3)"); O'Sullivan v. Countrywide Home Loans, Inc., 319 F.3d 732, 745 (5th Cir. 2003) (holding that district court abused its discretion in certifying class "[i]n light of the individual calculation of damages that is required"); Allison v. Citgo Petroleum Corp., 151 F.3d 402, 419 (5th Cir. 1998) (holding that certification under Rule 23(b)(3) was not appropriate because "plaintiffs' claims for compensatory and punitive damages must therefore focus almost entirely on facts and issues specific to individuals rather than the class as a whole").

We have held that a district court did not abuse its discretion in certifying a class action where "calculating damages will require some individualized determinations," and "virtually every issue prior to damages is a common one." Bertulli v. Indep. Ass'n of Continental Pilots, 242 F.3d 290, 298 (5th Cir. 2001). However, Bertulli merely held that the district court had not abused its discretion; it does not hold that the calculation of damages can never be a grounds for denying class certification. Bertulli is also distinguishable because the court noted that "for the vast majority of plaintiffs . . . . damages will be nominal and their primary relief will be injunctive." Id. at 299. "Importantly, in Bertulli, the court recognized the plaintiffs' claims for injunctive relief

3

on top of money damages, noting that 'not all of the relief requires individualized determination.'" O'Sullivan, 319 F.3d at 745 n.27 (quoting Bertulli, 242 F.3d at 298).

On the issue of damages, the district court in the pending case concluded that individualized determination would be required because many of the class members negotiated a price rather than being charged strictly on price lists. The court reasoned that

> [e]ven if the bidding process used by school districts and private label purchasers originally began with a wholesale price list that was fixed, the final price paid involved many factors including the amount of products purchased, the geographic market, the particular services included with each purchase, delivery costs, the discount negotiated off the wholesale price list, and potentially the negotiating skills of the purchaser and the sales representative.

215 F.R.D. at 530-31. Plaintiffs do not persuade us that these factors are irrelevant to the damages suffered by individual class members.

The courts have long held in antitrust cases that once the fact of damages is proven, there is a relaxed burden of proving the amount of damages. See Pierce v. Ramsey Winch Co., 753 F.2d 416, 435 (5th Cir.1985). "But this tolerant view is limited by our responsibility not to allow damages to be determined by 'guesswork' or 'speculation'; we must at least insist upon a 'just and reasonable estimate of the damage based on relevant data.'" Lehrman v. Gulf Oil Corp., 464 F.2d 26, 46 (5th Cir. 1972) (quoting Bigelow v. RKO Radio Pictures, Inc., 327 U.S. 251, 264 (1946)). The district court correctly summarized this law by noting that "[w]hile damages in the antitrust

4

context need not be proven with exact particularity, they may not be merely speculative."

215 F.R.D. at 530. The court reasoned that

> [a]lthough proof of antitrust <u>injury</u> can be shown by the common proof that each was in fact injured by the alleged conspiracy, the amount of <u>damages</u> resulting from that injury will require some degree of investigation into facts specific to each Plaintiff and potentially facts specific to each Plaintiff's numerous negotiations and transactions over the course of many years.

<u>Id.</u> This reasoning is consistent with <u>Bell Atlantic</u>, where we stated that "even if we were to conclude that the district court's decision as to [the] fact of damage was in error, we find that the plaintiffs' motion for certification nevertheless founders on the issue of the amount of damages." 339 F.3d at 303.

Further, as the district court explains, plaintiffs should not be heard to complain that the class includes larger purchasers who individually negotiated prices. Defendant Interstate Brands was willing to agree to a class limited to purchasers who relied on the price lists and subject to other limitations, but plaintiffs wanted to include the larger purchasers who used a bidding process.

Plaintiffs complain that they offered an expert's view that damages could be calculated in a relatively straightforward manner, and that the district court failed to even discuss the expert's opinion. The district court did cite to the certification hearing transcript where the expert's views were discussed by counsel, and stated that it nevertheless did

> not believe, given the numerous independent factors that go into both the price that should have been paid and the price that was actually paid, that

5

there could be any general formula for calculating damages with precision, amounting to more than speculation, without requiring some degree of inquiry into the individual facts of 52,000 Plaintiffs and potentially thousands of transactions. Given the unique nature of the individual transactions, the court concludes that it is not reasonable to assume that a generalized formula can be created.

215 F.R.D. at 531. The district court's view finds support in the peculiar facts and circumstances of this case, and the court did not abuse its discretion in failing to give the expert's views more discussion or credence.[1]

The district court was not required to accept the expert's view. Class certification is a ultimately a legal determination for the court, based on the standards set forth in Rule 23, and the views of an expert in economics or any other field can at most inform that decision. While the credentials of the expert, Dr. Asher, are solid, we do not find his affidavit so compelling that we must conclude that the district court's refusal to certify the class was an abuse of discretion. First, Asher does not address the fraudulent concealment issue, discussed below, which the district court found was one of two reasons that individual issues predominated over class issues.

Asher discusses use of the "yardstick" and the "before and after" approaches to calculating damages, two recognized methods of proving antitrust damages. Lehrman v. Gulf Oil Corp., 500 F.2d 659, 667 (5th Cir. 1974). The "yardstick" method requires a comparable industry and Asher admitted that he had not found a comparable industry.

---

[1] We also note that the expert's affidavit states that it is filed under seal, which may explain why the district court did not discuss its contents in greater detail in its published opinion.

6

This leaves Asher's opinion that multiple regression analysis could be used to calculate damages under a before and after approach. The district court was not required to accept this opinion. Multiple regression analysis is not a magic formula. It is simply a mathematical tool for estimating a dependent variable based on a number of independent variables, which may or may not yield statistically significant results. The expert did not offer a formula based on regression analysis, but merely opined that one could be found. The affidavit was only a preliminary overview of how damages might be calculated.

Asher does not explain how to model "negotiating ability" or the geographic market, factors which the district court thought were relevant. We question whether these factors can be included in a general formula, since a variable cannot be included in a regression formula unless a numerical value can be assigned to it. Asher does not explain how to assign a numerical value for these factors, nor does he explain why they can be ignored.

Asher proposes that regression analysis could measure the effect of illegal price fixing with a before and after method that compares prices during a period when there was no illegal activity and controls for other variables such as input costs and the size of the account. Whatever theoretical appeal this approach has, plaintiffs do not persuade us that data for such periods is readily available for all class members, and as discussed below in the margin, Asher later stated in his expert report that the data needed to perform his proposed regression analysis was unavailable.

In short, plaintiffs and their expert did not persuade the district court, and do not persuade us, that a reliable formula for damages can be devised which will yield statistically significant results, that the data that would have to be plugged into such a formula can be assembled, that the relevant variables like negotiating skill can be quantified, and that all of this can be used to reliably measure antitrust damages for each of the many thousands of members of the proposed class. "Class treatment . . . may not be suitable where the calculation of damages is not susceptible to a mathematical or formulaic calculation, or where the formula by which the parties propose to calculate individual damages is clearly inadequate." Bell Atlantic, 339 F.3d at 307.[2]

---

[2] During oral argument and in letters to the court thereafter, the parties discussed the significance of a separate expert report prepared by Dr. Asher. The parties dispute whether this report should be considered on appeal. In addition, we question whether the district court considered it, since it was apparently filed to comply with a docket control order and was not specifically directed at the class certification issue. It was, however, filed long before the district court ruled on class certification. Regardless, the report does not alter our conclusion that the district court was within its discretion in denying class certification. First, the report actually undermines the earlier position in Asher's affidavit that damages could be determined using regression analysis. The report states in footnote 4: "Though I had initially proposed performing a regression analysis using individual plaintiff transaction data, no computerized information of the type needed to perform such a study was produced by defendant Interstate Brands Corporation." The report proposed to measure damages based on financial data for Interstate Brands' predecessor Continental Baking Company. It proposed taking an average profit margin of this company for the two years after the class period, assuming that this average margin would have prevailed during the class period when prices were allegedly fixed, and measuring damages as the difference between the margins that would have been earned under this assumption and the margins actually earned during the period of the alleged conspiracy. This measure of damages is for the whole class, and does not address the district court's primary reason for denying class certification, namely that damages to each individual class member could not be calculated by a formula and would require individualized proof.

B.    Fraudulent Concealment

On the issue of fraudulent concealment, plaintiffs wanted a class period that extended back to 1977, based in part on a fraudulent concealment theory to extend the limitations period. "To avail himself of this tolling doctrine, an antitrust plaintiff must show that the defendants concealed the conduct complained of, and that he failed, despite the exercise of due diligence on his part, to discover the facts that form the basis of his claim." In re Beef Industry Antitrust Litigation, 600 F.2d 1148, 1169 (5th Cir. 1979).

The district court reasoned that on this issue "some degree of individual proof will be required." 215 F.R.D. at 532. We agree. In Greenhaw v. Lubbock County Beverage Ass'n, 721 F.2d 1019 (5th Cir. 1983), we held that a class-wide determination of fraudulent concealment was not possible, because an individualized determination of "the state of knowledge of each class member" was required. Id. at 1030. We held that the jury's findings of lack of knowledge and due diligence for the class members as a whole was "without meaning." Id. The issue of fraudulent concealment does not necessarily doom class treatment, since Greenhaw itself solved the problem by bifurcating the case into class issues and a phase two determination of individual damages. It is, however, a factor weighing against certification because it requires individualized determinations. Greenhaw involved a class with 6734 members, only a few of which sought damages in phase two, id. at 1023-24, compared with a class of 52,000 in the pending case.

We also believe that Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co., 319 F.3d 205 (5th Cir. 2003), supports the district court's decision. Sandwich Chef

9

was a RICO case where we held that the district court abused its discretion in certifying a class where individualized proof of reliance was required. Id. at 211. While the issue in the pending case is knowledge and due diligence versus reliance, all of these issues turn on the individual plaintiff's action or inaction based on his state of knowledge. The district court's decision in the pending case also finds support in In re Corrugated Container Antitrust Litigation, 659 F.2d 1322, 1325 (5th Cir. 1981), where we noted, in the context of the district court's approval of a settlement in an antitrust suit, that "proving due diligence class-wide on a claimant-by-claimant basis would be particularly difficult."

We express no opinion as to whether concerns about fraudulent concealment, standing alone, would justify denial of class certification, and note plaintiffs' argument that fraudulent concealment applies only to part of the class period. Nevertheless, we are persuaded that the issue of fraudulent concealment is a further reason for concluding that the district court did not abuse its discretion in refusing to certify the class.

AFFIRMED.