Duane **CORLEY**, et al., Plaintiffs,

v.

**ENTERGY CORPORATION,**
et al., Defendants.

Douglas C. **Dishman**, et al., Plaintiffs,

v.

Entergy Corporation, et al., Defendants.

Nos. 1:98–CV–2006, 1:98–CV–2054.

United States District Court,
E.D. Texas,
Beaumont Division.

April 14, 2004.

See, also, 297 F.Supp.2d 915.

Raymond Lyn Stevens, Stevens, Baldo & Freeman LLP, Richard Lyle Coffman, Sheldon, Jordan & Dunham, Beaumont, TX, for Plaintiffs.

Lawrence Louis Germer, David Lawrence Merkley, Lawrence James Simmons, Jr., Germer, Bernsen & Gertz, Beaumont, TX, for Defendants.

*ORDER DENYING REPRESENTATIVE PLAINTIFFS' AMENDED AND CONSOLIDATED MOTION FOR CLASS CERTIFICATION AND DENYING REPRESENTATIVE PLAINTIFFS' SUPPLEMENTAL MOTION FOR CLASS CERTIFICATION*

RICHARD A. SCHELL, District Judge.

Before the court are the following written submissions:

a) "Representative Plaintiffs' Amended and Consolidated Motion for Class Certification and Supporting Memorandum of Law" (Dkt.# 206), filed on July 31, 2003;

b) "Objection of Certain Class Members to Class Intervention" (Dkt.# 220), filed on December 1, 2003;

c) "Representative Plaintiffs' Supplemental Motion for Class Certification" (Dkt.# 222), filed on December 5, 2003;

d) "Defendants' Response in Opposition to Plaintiffs' Motion for Class Certification" (Dkt.# 244), filed on January 15, 2004;

e) "Representative Plaintiffs' Reply Brief to the Intervenors' Response to Their Motion for Class Certification" (Dkt.# 264), filed on February 26, 2004;

f) "Representative Plaintiffs' Reply Brief in Support of Their Motion for Class Certification" (Dkt.# 265), filed on February 26, 2004;

g) "Intervenors' Sur–Reply to Representative Plaintiffs' Reply to Opposition to Class Certification" (Dkt.# 267), filed on March 2, 2004; and

h) "Defendants' Surreply Brief in Opposition to Plaintiffs' Motion for Class Certification" (Dkt.# 268), filed on March 4, 2004.

The court held a class certification hearing on March 22, 2004. After careful consideration, the court is of the opinion that Representative Plaintiffs' amended and consolidated motion for class certification and Representative Plaintiffs' supplemental motion for class certification should be DENIED.

## I. BACKGROUND

In early 1994, Defendant Entergy Corporation and its subsidiaries ("Defendants") began construction of a network for the transmission of electricity ("Network"). Representative Pls.' Original Consol. Class Action Compl., ¶ 4.13 (Dkt.# 205). The Network, which Defendants built over a two-year period, "consists of 1400+ miles of owned fiber optic cable of varying sizes strung on poles...." *Id.*, ¶ 4.14. These fiber optic cables also serve as neutral static wires. *Id.*, ¶ 4.15. One may transmit not only electricity through these cables, but also voice, data, and video communications. *Id.*

The Network has three major routes and encompasses land in Arkansas, Louisiana, Mississippi, and Texas. *Id.*, ¶ 4.14. In connection with the construction and maintenance of the Network, Defendants acquired various easements, servitudes, and rights-of-way over land located throughout Louisiana, Mississippi, and Texas. *Id.*, ¶ 4.4. Defen-

dants obtained these property rights in order to transmit electricity and electricity-related internal communications. *Id.*

Representative Plaintiffs Duane T. Corley, Douglas C. Dishman and Tim E. Dishman, William A. Roane, Fear Farms, Inc., and Ruby B. Wilson ("Plaintiffs") reside in and own land in Louisiana, Mississippi, and Texas. *Id.*, ¶¶ 3.1–3.6. Corley, Roane and the Dishmans are Texas class representatives. *Id.*, ¶ 4.5. Fear Farms, Inc. is the sole class representative from Louisiana. *Id.* Wilson represents potential class members in Mississippi. *Id.*

Plaintiffs allege that Defendants operated and currently operate the Network "for purposes other than the transmission of electricity and the Corporate Defendants' electricity-related internal communications ... over land owned by the Representative Plaintiffs and Class members." *Id.* Defendants' alleged conduct, Plaintiffs contend, violates the language of the applicable easements. *Id.*, ¶ 4.16. Moreover, Plaintiffs argue that Defendants neither notified them of this conduct nor obtained their permission to do so. *Id.*, ¶ 4.13. Defendants' actions, Plaintiffs allege, constitute an unlawful trespass to land under Louisiana, Mississippi, and Texas law. *Id.*, ¶ 4.5.

Plaintiffs have also brought claims for conversion, breach of contract, civil conspiracy, and unjust enrichment under Louisiana, Mississippi, and Texas law. *Id.*, ¶¶ 11.55–11.56, 11.59–64. Moreover, Plaintiffs contend that Defendants and various telecommunications companies violated and conspired to violate the Racketeer Influenced and Corrupt Organization Act ("RICO statute"), 18 U.S.C. §§ 1961–1968 (2000), by entering into illegal transactions involving revenues derived from the Network. *Id.*, ¶¶ 7.7, 11.1–11.54. Plaintiffs seek actual damages, treble damages under the RICO statute, punitive damages, attorneys' fees and court costs, and an injunction under the RICO statute preventing Defendants from transmitting any kind of third-party communications. *Id.*, ¶¶ 14.2–14.7.

Plaintiffs have filed this lawsuit as a class action under Federal Rule of Civil Procedure 23. *Id.*, ¶ 9.2. They have filed an original and a supplemental motion to certify a class consisting of all present owners of land in Louisiana, Mississippi, and Texas over which Defendants have strung (or buried) fiber optic cable, and over which communications other than electricity-related communications have occurred. *Id.; see* Defs.' Resp. in Opp'n to Pls.' Mot. for Class Certification at 11–12, Ex. 2 (Dkt.# 244) (Letter of Jan. 13, 2004 from R. Lyn Stevens to Lawrence Germer, Esq., p. 1). Plaintiffs claim they have satisfied all of Rule 23(a)'s requirements and argue that class certification is proper under Rule 23(b)(1), (b)(2), and (b)(3). Representative Pls.' Original Consol. Class Action Compl., ¶ 9.4–9.12. Plaintiffs wish to litigate their various claims through three subclasses: the Louisiana Landowner Subclass, the Mississippi Landowner Subclass, and the Texas Landowner Subclass. Representative Pls.' Supp. Mot. for Class Certification at 8–9 (Dkt.# 222).

Plaintiffs and Defendants have filed and the court has considered many dispositive and non-dispositive motions. Notably, the court has ruled on the scope of the Texas easements. The court previously held that Defendants cannot use Type I and Type II easements to transmit third party communications, that Defendants can use Type III easements to transmit third party voice and data communications, and that Defendants can use Type IV easements to transmit third party voice, data, and video communications. *Corley v. Entergy Corp.*, 246 F.Supp.2d 565, 582 (E.D.Tex.2003). Plaintiffs recently filed a motion for summary judgment on the meaning of the Louisiana and Mississippi easements (Dkt.# 236).

The court has also permitted various Texas landowners to intervene in this lawsuit to object to class certification. Order Granting Mot. of Certain Class Members to Intervene to Object to Class Certification at 1 (Dkt.# 229). Those landowners have filed a brief opposing class certification. Intervenors' Sur–Reply to Representative Pls.' Reply to Opp'n to Class Certification (Dkt.# 267). Last December, the court denied Plaintiffs' motion to enjoin two competing Louisiana class action lawsuits under the All Writs Act and to enjoin Defendants from

settling those two class action lawsuits without court approval and notice. *Corley v. Entergy Corp.*, 297 F.Supp.2d 915, 920–21 (E.D.Tex.2003). The question now before the court is whether class certification is proper under Federal Rule of Civil Procedure 23.

## II. DISCUSSION

### A. RULE 23(a)

The party seeking certification "bears the burden of demonstrating that the requirements of rule 23 have been met." *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 737–38 (5th Cir.2003) (citation omitted). In turn, the district court "must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996) (citations omitted). Though the decision to certify is committed to the sound discretion of the district court, *id.*, the district court must exercise its discretion "within the framework of rule 23." *Id.* In exercising its discretion, the district court cannot look at the merits of the underlying claims. *See Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 316 (5th Cir.1978). The court must, however, consider the substantive law that will govern plaintiffs' claims. *Id.; see also Castano*, 84 F.3d at 741.

Rule 23(a) states that a putative class must satisfy four requirements: numerosity, commonality, typicality, and adequacy. FED. R.CIV.P. 23(a)(1)-(4). In order for a district court to certify a class, the party seeking certification must first prove that all four requirements of Rule 23(a) are met. *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir.2003). A failure to meet any of these four requirements prevents class certification. *Id.* The court now examines whether Plaintiffs have met Rule 23(a)'s four requirements: numerosity, commonality, typicality, and adequacy.

### 1. NUMEROSITY

■ Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." FED.R.CIV.P. 23(a)(1). Plaintiffs claim that "there are over 500 individual easements at issue dispersed over three states." Representative Pls.' Am. and Consol. Mot. for Class Certification and Supporting Mem. of Law at 17 (Dkt.# 206). Conceding the point, Defendants do not dispute that Plaintiffs have met the numerosity requirement. *See* Defs.' Resp. in Opp'n to Pls.' Mot. for Class Certification at 31–37. Thus, Rule 23(a)(1) is satisfied.

### 2. COMMONALITY

■ Rule 23(a)(2) states that the district court may certify a class if "there are questions of law or fact common to the class." FED.R.CIV.P. 23(a)(2). "The test for commonality is not demanding and is met 'where there is *at least one issue*, the resolution of which will affect all or a significant number of the putative class members.'" *Mullen v. Treasure Chest Casino, L.L. C.*, 186 F.3d 620, 625 (5th Cir.1999) (emphasis added) (quoting *Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir.1997)). A single common question of law, such as Defendants' alleged violation of a federal statute, establishes commonality. *See, e.g., Lightbourn*, 118 F.3d at 426. Neither the presence of individualized claims nor differences in claims between potential class members defeats commonality. *James v. City of Dallas*, 254 F.3d 551, 570 (5th Cir.2001). Moreover, the plaintiffs' claims need not be identical. *Id.*

Here, Plaintiffs allege that Defendants violated the RICO statute. Representative Pls.' Original Consol. Class Action Compl., ¶¶ 7.7, 11.1–11.54. Thus, all plaintiffs share "a common legal theory." *James*, 254 F.3d at 570 (emphasis added); *Mullen*, 186 F.3d at 625. The issue of whether Defendants violated the RICO statute affects all potential class members. Thus, the court concludes that commonality exists.[1]

---

1. Defendants, however, claim that commonality does not exist because the court will have to analyze each landowner's easement agreement individually to determine that landowner's rights. Defs.' Resp. in Opp'n to Pls.' Mot. for Class Certification at 31. Further, Defendants aver that legal and factual differences in Plaintiffs' claims preclude a finding that commonality exists. *Id.* at 31–33. The court disagrees with Defendants.

### 3. TYPICALITY

■ Rule 23(a)(3) states that a class may be certified if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R.CIV.P. 23(a). "The test for typicality, like the test for commonality, is not demanding." *Lightbourn*, 118 F.3d at 426. Typicality concerns "the similarity between the named plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent." *Id.* (citation omitted). The representative plaintiffs need not advance theories identical to those of potential class members. *Id.* Rather, typicality exists if "the class representative's claims have the same essential characteristics as those of the putative class." *James*, 254 F.3d at 571 (quotation omitted).

In this case, Plaintiffs' claims are typical of the claims of absent class members because Plaintiffs bring the same claims that absent class members would bring. "Rule 23(a)(3) does not require perfectly identical claims." *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 215 F.R.D. 523, 530 (E.D.Tex. 2003). Nor do factual variations between the claims of Plaintiffs and absent class members preclude typicality. *See id.* The central allegation in this case is that Defendants illegally operated a fiber optic network without authorization from and notice to Plaintiffs. Representative Pls.' Original Consol. Class Action Compl., ¶ 4.5. Although Plaintiffs' and absent class members' claims may differ factually, factual variations in claims do not preclude a finding of typicality. *See James*,

254 F.3d at 571. Plaintiffs have satisfied the low threshold for typicality.[2]

### 4. ADEQUACY

■ Rule 23(a)(4) requires that counsel for the representative plaintiffs "fairly and adequately protect the interests of the class." FED.R.CIV.P. 23(a)(4). This requirement concerns "both the class representatives and their counsel." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir.1986). The court must first determine whether the class representatives will protect the interests of the class. *Mullen*, 186 F.3d at 625–26. In making this determination, the court must examine whether the interests of the representative plaintiffs and those of absent class members are sufficiently aligned. *Id.* at 626.

"Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives *only if those differences create conflicts of interest between the named plaintiffs' interests and the class members' interests.*" *Id.* (citing *Jenkins*, 782 F.2d at 472 (emphasis added)). For example, the presence of different claims that are subject to different statutes of limitations *might* render the class representatives inadequate even if subclasses exist. *Cf. Stirman v. Exxon Corp.*, 280 F.3d 554, 563 & n. 7 (5th Cir.2002); *Kirkman*, 220 F.R.D. at 53. In examining whether counsel for the representative plaintiffs will protect the class's interests, the court focuses on "the zeal and competence of the [class] representative's counsel." *Horton v. Goose Creek Indep.*

---

In arguing that commonality is not present, Defendants focus on the predominance requirement of Rule 23(b)(3) and thus improperly conflate commonality and predominance. *Id.* at 31 ("These [affirmative defenses] also inevitably involve individual issues, which preclude a finding of predominance." (citation omitted)). The question of whether predominance under Rule 23(b)(3) exists is quite distinct from the question of whether commonality under Rule 23(a)(2) exists. *See Bell Atl. Corp. v. AT & T Corp.*, 339 F.3d 294, 301 (5th Cir.2003). Because they focus their energies and briefing on the predominance requirement of Rule 23(b)(3), Defendants have not rebutted Plaintiffs' arguments that commonality exists under Rule 23(a)(2).

**2.** The court is concerned, however, regarding the issue of limitations. A different limitations period governs each of Plaintiffs' state law claims.

Moreover, Plaintiffs admitted at the class certification hearing that the claims of some of the Louisiana Plaintiffs may be time-barred because those Plaintiffs might have received actual notice of Defendants' conduct. *Cf. Kirkman v. N.C.R.R. Co.*, 220 F.R.D. 49, 53 (M.D.N.C.2004). The presence of a statute of limitations defense that may defeat the claims of absent members militates against a finding that Plaintiffs have met the typicality requirement. *See id.; see also Doe v. Chao*, 306 F.3d 170, 184 (4th Cir.2002); *Hallaba v. Worldcom Network Servs., Inc.*, 196 F.R.D. 630, 643 (N.D.Okla.2000). The limitations question, however, is far more relevant to the issue of whether individual issues predominate over common issues. At present, it suffices to say that Plaintiffs have surmounted the low bar required to establish typicality.

*Sch. Dist.,* 690 F.2d 470, 484 (5th Cir.1982). The court determines whether counsel for plaintiffs, by virtue of experience and training, possesses the necessary qualifications to fully litigate the case. *Id.* Additionally, the court evaluates the cumulative efforts of Plaintiffs' counsel. *Id.*

As a threshold matter, the court concludes that counsel for Plaintiffs will adequately protect the class's interests. "Class actions are intended to serve as a vehicle for capable, committed advocates to pursue the goals of the class members through counsel...." *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 484 (5th Cir.2001). This statement summarizes what has transpired in this case. Plaintiffs' lawyers are experienced advocates who have substantial experience in class action cases. Notably, Defendants do not challenge the adequacy of counsel for Plaintiffs. Defs.' Resp. in Opp'n to Pls.' Mot. for Class Certification at 35–37. Thus, the court finds that the attorneys for Plaintiffs are adequate representatives.

The court also believes that Plaintiffs themselves are adequate class representatives. Plaintiffs have established, on the present record, that their interests do not conflict with those of absent class members. Defendants, however, claim that Plaintiffs are inadequate class representatives because "their per-foot distribution of damages creates an impermissible conflict of interest." Defs.' Resp. in Opp'n to Pls.' Mot. for Class

Certification at 35. The court does not, however, find this argument to be persuasive. Plaintiffs have satisfied Rule 23(a)(4).[3]

### B. RULE 23(b)

The party seeking certification "must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *McManus,* 320 F.3d at 548 (citing FED.R.CIV.P. 23(b)). Plaintiffs claim that the court may certify this class under Rule 23(b)(3) or, alternatively, certify on liability under Rule 23(b)(2) and on damages under Rule 23(b)(3).[4] The court addresses each argument in turn.

#### 1. RULE 23(b)(3)

District courts may certify a class if "the court finds that the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy." FED.R.CIV.P. 23(b)(3) (emphasis added). In deciding whether to certify a class under Rule 23(b)(3), district courts consider the following factors:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

---

**3.** As was the case with the typicality requirement, the court is concerned regarding the various statutes of limitations and their effect on the adequacy of Plaintiffs as class representatives. Even where, as here, Plaintiffs propose to litigate the class action through the use of subclasses, Class Plaintiffs cannot adequately represent absent class members if the Class Plaintiffs' claims are untimely. *See Stirman,* 280 F.3d at 563 & n. 7; *Kirkman,* 220 F.R.D. at 53. By extension, class representatives for each subclass may be inadequate if the claims of those whom they will represent are time-barred. *Stirman,* 280 F.3d at 563 n. 7; *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 337–40 (4th Cir.1998); *cf., e.g.,* Priya Laroia, Comment, *Individualized Affirmative Defenses Bar Class Certification—Per Se,* 2003 U. CHI. LEGAL F. 805, 817.

At the class certification hearing, counsel for Plaintiffs informed the court that some of the Louisiana plaintiffs may have received actual notice of Defendants' conduct. Counsel for Plaintiffs were unsure of precisely how many

Louisiana landowners had received such notice. Consequently, the claims of some Louisiana plaintiffs are potentially time-barred.

The existence of a statute of limitations defense in this case and the varying statutes of limitations for Plaintiffs' claims indicate that Plaintiffs might well be inadequate class representatives. *See Stirman,* 280 F.3d at 563 n. 7; *Broussard,* 155 F.3d at 337–40. The record currently before the court on this issue, however, is incomplete. Thus, the court is presently of the opinion that "the proposed class representatives' interests do not conflict in any way with the interests of the proposed class." *Piggly Wiggly Clarksville, Inc.,* 215 F.R.D. at 530.

**4.** Plaintiffs previously sought certification under Rule 23(b)(1), (b)(2), and (b)(3). At the class certification hearing, however, Plaintiffs withdrew their motion to certify the class under Rule 23(b)(1) and (b)(2).

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the difficulties likely to be encountered in the management of a class action.

*Id.* The court now examines whether Plaintiffs have met Rule 23(b)(3)'s two requirements: predominance and superiority.

### a. Predominance

The predominance requirement of Rule 23(b)(3) is far more stringent and exacting than the commonality requirement of Rule 23(a)(2). *O'Sullivan,* 319 F.3d at 738. In determining whether common issues predominate over individual issues, the court must painstakingly examine the claims and defenses at issue. *Castano,* 84 F.3d at 744. The court cannot "rely on assurances of counsel that any problems with predominance or superiority can be overcome." *Id.* at 742 (citation omitted).

Courts should consider whether there exists a formula to calculate damages that is susceptible to uniform, consistent application and whether there are substantial variations in state law. *See id.; see also Stirman,* 280 F.3d at 564–66. This inquiry "does not resolve the case on its merits." *O'Sullivan,* 319 F.3d at 738. Instead, the district court examines how the case would be tried following class certification. *See id.*

### i. Plaintiffs' Damages Formula

■ In this circuit, "[c]lass treatment ... may not be suitable where the calculation of damages is not susceptible to a mathematical or formulaic calculation, or where the formula by which the parties propose to calculate individual damages is [plainly] inadequate." *Bell. Atl. Corp.,* 339 F.3d at 307.[5] Moreover, if damage claims focus on individualized issues, it is quite possible that a class action lawsuit, if certified, would "degenerate ...

into multiple lawsuits separately tried." *O'Sullivan,* 319 F.3d at 744 (quoting *Castano,* 84 F.3d at 745 n. 19 (citation omitted)). Thus, if the court must determine damages on an individual basis rather than on a class-wide basis, common issues do not predominate over individual issues. *See Bell Atl. Corp.,* 339 F.3d at 307; *see also Windham v. Am. Brands, Inc.,* 565 F.2d 59, 67–68 (4th Cir.1977).

Here, Defendants filed *Daubert* motions to exclude the expert testimony of Plaintiffs' experts. Defendants allege that there is no uniform, class-wide methodology to measure damages. *See* Defs.' Resp. in Opp'n to Pls.' Mot. for Class Certification at 20–21. Plaintiffs, however, aver that the court may calculate damages for their trespass claims and for all of their claims on a linear, dollar-per-foot basis.

The court previously granted Defendants' motions to strike the testimony of two of Plaintiffs' expert witnesses. The court did so because it is not feasible to calculate damages on a class-wide basis. Plaintiffs' trespass claims all arise from Defendants' operation of the Network. Thus, the nature of Plaintiffs' trespass claims is invariable. For reasons to be explained, however, the extent of Defendants' trespass on each class member's land is quite variable. *Cf. O'Sullivan,* 319 F.3d at 744.

This case involves the operation of a fiber optic network over hundreds of parcels of land located in three states. Some tracts of land on which Defendants operate the Network are more geographically desirable than others.[6] Some parcels of land are more valuable than others because those parcels of land are located at a strategic point on the Network or the fiber optic cable on those parcels of land generates more revenue for

---

**5.** *See also O'Sullivan,* 319 F.3d at 744 ("The extent (but not the nature) of Countrywide's participation in the transactions varies, making individualized calculations of damages predominate."); *Piggly Wiggly Clarksville, Inc.,* 215 F.R.D. at 531 ("Predominance and manageability may be destroyed solely by the complexity of determining damages when that determination does not lend itself to a mathematical calculation that can be applied to all the class members.").

**6.** *See* Defs.' Mot. to Exclude Expert Testimony of Oren Russell, Ex. 1 (Dkt.# 250) (Depo. Tr. of Oren W. Russell, MIA, SRA at 213:17–214:1) (recognizing that the location of different parcels of land on the Network should be considered in evaluating damages).

Defendants.[7] Finally, some landowners own land that has a high per-acre value; other landowners, however, own land that has a low per-acre value.[8] One of Plaintiffs' experts acknowledges that differences in land ownership exist between class members and recognizes that the extent of the trespass suffered by Plaintiffs is highly variable.[9]

The fact-intensive, individualized nature of Plaintiffs' trespass claims leads the court to conclude that Plaintiffs' claims are not suitable to uniform calculation. One district court in this circuit has found that damages for an alleged trespass stemming from the operation of a fiber optic network cannot be determined based on a dollar-per-foot formula. In *Hebert v. Doyle Sand Services, Inc.,* Docket No. 2:00–CV–1851, at 1 (W.D.La. Mar. 5, 2002), the court declined to certify a class consisting of Louisiana landowners who brought trespass claims. The court held that trespass damages require individualized determination. *Id.* at *4. Specifically, the court disagreed with the plaintiffs that trespass damages could be uniformly assessed:

> As noted the fiber optic cable involved in this litigation was installed from the Texas border to the Mississippi border. At points it goes through cities, including New Orleans. At other points it traverses various types of rural land ranging from prime farm land to swamp. *It strains credibility to suggest that the property damages for the alleged trespass across the entire state can be measured by one measure.*

*Id.* (emphasis added). The court finds *Hebert* to be persuasive and analogous to the present case. Here, as in *Hebert*, the Defendants intend to offer evidence that trespass damages will vary greatly. This is as it should be. Damages for trespass to land cannot be calculated without examining the individual circumstances underlying land ownership. Overall, trespass damages in this case cannot be calculated on a class-wide basis. Instead, each landowner is entitled to damages based on the specific characteristics of his or her land and the extent of the Defendants' trespass on his or her land. *See id.*[10]

"Where the plaintiffs' damages claims 'focus almost entirely on facts and issues specific to individuals rather than the class as a whole,' the potential exists that the class action may 'degenerate in practice into multiple lawsuits separately tried.'" *O'Sullivan,* 319 F.3d at 744 (quoting *Castano,* 84 F.3d at 745 n. 19 (citation omitted)). "In such cases, class certification is inappropriate." *Id.* at 745. This case presents just such a situation. Because each landowner's trespass damages

---

7. *See id.,* Ex. 1 (Depo. Tr. of Oren W. Russell, MIA, SRA at 138:1–6) (acknowledging that a landowner in downtown Houston, Texas would need to be compensated more than a person in a rice field in Winnie, Texas)

8. *See id.,* Ex. 1 (Depo. Tr. of Oren W. Russell, MIA, SRA at 136:7–9) (noting that "there may be portions of this 1400–mile corridor that are more valuable than others"); *id.,* Ex. 1 (Depo. Tr. of Oren W. Russell, MIA, SRA at 135:18 19) ("There is some evidence that in cities the price paid per foot is higher.").

9. *See supra* notes 6–8.

10. Even in cases where the court approved a dollar-per-foot formula for trespass damages, the court also recognized the individualized nature of trespass damages. The most analogous case on which Plaintiffs rely, *Fisher v. Virginia Electric & Power Co.,* 217 F.R.D. 201 (E.D.Va.2003), also demonstrates that calculating damages for trespass to land claims ultimately requires individualized determinations. In *Fisher,* the Plaintiffs contended that damages could be calculated on a dollar-per-foot basis. *Id.* at 225. The court agreed with the Plaintiffs, concluding that "the per foot mode of valuing the value of the easement is the accepted, and perhaps only fair, way to calculate damages." *Id.*

The court, however, expressly acknowledged the possibility "that a different, more individualized measure of damages may obtain." *Id.; see also id.* at 226 ("[I]f the dollar-per-foot approach is not a measure of damages agreeable to all class members, there is a potential need for individual land valuations."); *id.* at 228 ("[T]here is a potential for reasonable conflicts among the class members on the appropriate measure of damages."). To avoid this possibility, the court in *Fisher* certified the class on liability under Rule 23(b)(2) yet certified the class on damages under Rule 23(b)(3). *Id.* at 226, 228. Thus, the court in *Fisher* utilized composite certification to avoid predominance problems stemming from the plaintiffs' damages formula. For reasons to be explained, Fifth Circuit precedent disallows such an end run around the predominance requirement. Thus, this court declines to follow the *Fisher* court and grant composite certification in this case.

will vary, the court concludes that damages cannot be calculated on a class-wide basis. Because the determination of Plaintiffs' damages "does not lend itself to a mathematical calculation that can be applied to all the class members," *Piggly Wiggly Clarksville, Inc.*, 215 F.R.D. at 531 (citations omitted), individual issues predominate over common issues. This issue alone prevents Plaintiffs from establishing predominance. *O'Sullivan*, 319 F.3d at 744.

### ii. The Proximate Cause Requirement for Plaintiffs' RICO Claims

■ Plaintiffs allege that Defendants violated and conspired to violate the RICO statute. Representative Pls.' Original Consol. Class Action Compl., ¶¶ 11.1–11.54. Moreover, Plaintiffs claim that Defendants *"proximately and directly caused* the Representative Plaintiffs and Class members to suffer injury to their businesses or property within the meaning of 18 U.S.C. § 1964(c)." *Id.*, ¶ 11.6 (emphasis added). To prevail on RICO claims, plaintiffs must establish that the defendant's conduct was the "proximate cause" of their injuries. *Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 218 (5th Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 124 S.Ct. 101, 157 L.Ed.2d 37 (2003). The proximate cause standard requires each plaintiff to *individually* prove a causal link between his or her injuries and the defendant's conduct *See id.* at 219.

District courts in this circuit, and elsewhere, have often found that the proximate cause requirement for RICO claims "precludes a finding that questions of law or fact common to the class predominate over questions only affecting individual members." *Ruffu v. Johnson & Johnson, Inc.*, 181 F.R.D. 341, 344 (E.D.Tex.1998) (citation omitted). Thus, these courts have found that

individual issues predominate over common issues because of the proximate cause requirement for RICO claims. *See, e.g., id.*[11] Because the court finds these cases to be both instructive and persuasive, the court now does the same in this case.

It bends reason to assume that Defendants' operation of the Network uniformly affected at least five hundred plaintiffs owning different parcels of land in three states. *Cf. id.* If the court certified Plaintiffs' RICO claims, the court would have to determine the specific nature and extent of each class plaintiff's injury as well as if and how Defendants' operation of the Network caused that injury. *Cf., e.g., id.* Thus, the proximate cause requirement for Plaintiffs' RICO claims further demonstrates that individual issues predominate over common issues.

### iii. Statute of Limitations

■ Under *Castano*, "variations in state law may swamp any common issues and defeat predominance." 84 F.3d at 741 (citations omitted). District courts must examine whether individual issues necessary to decide an affirmative defense preclude class certification. *Id.* at 744. "Limitations is an affirmative defense." *In re Monumental Life Ins. Co.*, 365 F.3d 408, 420, No. 02–30540, 2004 WL 718806, at *8 (5th Cir. April 2, 2004) (citations omitted). By its nature, a statute of limitations defense is fact-intensive and individualized. *See id.* The presence of this affirmative defense and its varying applicability may defeat predominance and thus preclude class certification. *See Castano*, 84 F.3d at 744.[12]

Here, different statutes of limitations govern Plaintiffs' state law claims. The statute of limitations for conversion claims is one year in Louisiana,[13] three years in Mississip-

---

11. *See also Kahler v. Firstplus Fin., Inc. (In re Firstplus Fin., Inc.)*, 248 B.R. 60, 77 (Bankr. N.D.Tex.2000); *Marascalco v. Int'l Computerized Orthokeratology Soc'y, Inc.*, 181 F.R.D. 331, 340 n. 20 (N.D.Miss.1998); *Commander Props. Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529, 539 (D.Kan.1995).

12. *See also Commander Props. Corp.*, 164 F.R.D. at 538–39; *cf. Barnes v. Am. Tobacco Co.*, 161

F.3d 127, 149 (3d Cir.1998); *Oxford v. Williams Cos., Inc.*, 137 F.Supp.2d 756, 764 (E.D.Tex. 2001).

13. La. Civ.Code Ann. art. 3492 (West 2002); *Charbonnet v. Spalitta*, 747 So.2d 1155, 1158 (La.Ct.App.1999), *writ denied,* 754 So.2d 974, 974 (La.2000).

pi,[14] and two years in Texas.[15] The statute of limitations for trespass to land claims is one year in Louisiana,[16] three years in Mississippi,[17] and two years in Texas.[18] The statute of limitations for breach of contract claims is ten years in Louisiana,[19] three years in Mississippi,[20] and four years in Texas.[21] The statute of limitations for the civil conspiracy claims is one year in Louisiana,[22] one year in Mississippi,[23] and two years in Texas.[24] Finally, the statute of limitations for unjust enrichment claims is ten years in Louisiana,[25] three years in Mississippi,[26] and two years in Texas.[27]

In short, Louisiana, Mississippi, and Texas have widely varying statutes of limitations on each of Plaintiffs' claims. Plaintiffs attempt to solve this problem by proposing to litigate this class action case through subclasses for each state. Even so, these varying statutes of limitations, as well as their differing effects on Plaintiffs' claims, slay predominance. *See Castano*, 84 F.3d at 744; *Commander Props. Corp.*, 164 F.R.D. at 538–39.

Defendants "lit" the fiber optic cable between 1990 and 1996. Defs.' Resp. in Opp'n to Pls.' Mot. for Class Certification at 32. Plaintiffs filed this lawsuit on November 25, 1998, thus tolling the statute of limitations. *Crown, Cork & Seal, Inc. v. Parker*, 462 U.S. 345, 353–54, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). Depending on when each landowner became aware of Defendants' alleged conduct, some landowners' claims may be barred yet others may still be viable. Plaintiffs plainly acknowledged this possibility at the class certification hearing by informing the court that some Louisiana landowners may have received actual notice of Defendants' conduct.[28]

The issues of whether individual landowners' claims are timely and whether equitable tolling applies to some or all of these claims are issues that are not amenable to class treatment. *Commander Props. Corp.*, 164 F.R.D. at 538–39; *cf. Barnes*, 161 F.3d at 149. Overall, there are too many individualized issues regarding the applicable statutes of limitations. These individualized issues render this case unsuitable for class certification under Rule 23(b)(3). *See Commander Props. Corp*, 164 F.R.D. at 538–39. Thus, the limitations question further prevents Plaintiffs from proving that common issues predominate over individual issues.

**14.** Miss.Code Ann. § 15–1–49(1) (1990); *First Bank v. E. Livestock Co.*, 886 F.Supp. 1328, 1330 (S.D.Miss.1995).

**15.** Tex. Civ. Prac. & Rem.Code Ann. § 16.003(a) (Vernon Supp.2002).

**16.** La Civ.Code Ann. art. 3493 (West 2002); *Perrilloux v. Stilwell*, 814 So.2d 60, 62 (La.Ct.App. 2002).

**17.** Miss.Code Ann. § 15–1–49(1) (1990); *see S. Land & Res. Co., Inc. v. Dobbs*, 467 So.2d 652, 654–55 (Miss.1985).

**18.** Tex. Civ. Prac & Rem.Code Ann. § 16.003(a); *Nugent v. Pilgrim's Pride Corp.*, 30 S.W.3d 562, 576 (Tex.App.-Texarkana 2000, no pet.).

**19.** La. Civ.Code Ann. art. 3499 (West 2002); *Babkow v. Morris Bart, P.L.C.*, 726 So.2d 423, 429 (La.Ct.App.1998).

**20.** Miss.Code Ann. § 15–1–49(1); *Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So.2d 1196, 1200 (Miss.2001).

**21.** Tex. Civ. Prac. & Rem.Code Ann. § 16.051 (Vernon Supp.2002); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex.2002) (per curiam).

**22.** La. Civ.Code Ann. art. 3492.

**23.** *See Gasparrini v. Bredemeier*, 802 So.2d 1062, 1065–66 (Miss.Ct.App.2001); *see also* Miss.Code Ann. § 15–1–35 (2002).

**24.** Tex. Civ. Prac. & Rem.Code Ann § 16.003(a); *Chandler v. Chandler*, 991 S.W.2d 367, 394 (Tex. App.-El Paso 1999, pet. denied).

**25.** La. Civ.Code Ann. art. 3499; *Kilpatrick v. Kilpatrick*, 660 So.2d 182, 186 (La.Ct.App.1995); *New Hotel Monteleone, Inc. v. First Nat'l Bank of Commerce, Inc.*, 423 So.2d 1305, 1309 (La.Ct. App.1982).

**26.** *See* Miss.Code Ann. § 15–1–29(1) (1990); *see Haynes v. Lemann*, 921 F.Supp. 385, 392 (N.D.Miss.1995), *aff'd*, 98 F.3d 1339 (5th Cir. 1996).

**27.** Tex Civ Prac & Rem Code Ann § 16.003(a); *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex.1998).

**28.** Counsel for Plaintiffs stated that it is unclear precisely how many Louisiana landowners received actual notice of Defendants' actions.

#### iv. Overall

The necessity for individual adjudication of damages claims, the proximate cause requirement for Plaintiffs' RICO claims, and the limitations question prevent the court from concluding that common issues predominate over individual issues. This lawsuit, if certified, "would degenerate in practice into multiple lawsuits separately tried." *Castano*, 84 F.3d at 745 n. 19 (quoting FED.R.CIV.P. 23(b)(3), Advisory Committee's Note). Thus, individual issues predominate over common issues.[29]

#### b. Superiority

■ To obtain class certification under Rule 23(b)(3), the plaintiffs must establish that "class resolution [is] superior to other available methods for the fair and efficient adjudication of the controversy." *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 265 (5th Cir.2000) (alteration in original) (citations omitted). A class action is inferior to individual lawsuits if class certification would result in a lawsuit that the district court could not manage due to logistical problems. *Castano*, 84 F.3d at 747–49. Moreover, a finding that predominance does not exist often mandates a finding that class treatment is inferior to individual adjudication. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419–20 (5th Cir.1998).

The most persuasive reason to find the class action to be the superior procedural mechanism, however, is the existence of a negative value suit, which is a lawsuit in which class plaintiffs' claims "would be uneconomical to litigate individually." *Phillips Petroleum v. Shutts*, 472 U.S. 797, 809, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *see also Castano*, 84 F.3d at 748. The district court must examine whether it would be feasible for class members to litigate their claims individually. *Castano*, 84 F.3d at 748.

In examining the feasibility of individual lawsuits, the court must examine the damages that successful class members could receive. *Allison*, 151 F.3d at 420. If potential damages recoverable by class members are substantial, the lawsuit does not qualify as a negative value suit. *See id.; see also Castano*, 84 F.3d at 748. If, however, each class member is suing for a relatively low amount of damages or is suing only or primarily for injunctive relief, the class action is the superior procedural device due to the existence of a negative value suit. *See, e.g., Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 299 (5th Cir.2001).

Plaintiffs claim that this lawsuit is a negative value suit because there are many landowners that own small tracts of land. Thus, the argument goes, these landowners would be unable to litigate their claims in the absence of class certification.[30] Having re-

**29.** Plaintiffs claim that there is ample precedent for certifying this case under Rule 23(b)(3). Representative Pls.' Am. and Consol. Mot. for Class Certification and Supporting Mem. of Law at 33–35. In making this argument, Plaintiffs rely upon *Bywaters v. United States*, 196 F.R.D. 458 (E.D.Tex.2000), and *Hash v. United States*, Case No. CV 99–324–S–MHW, 2000 WL 1460801, 2000 U.S. Dist. LEXIS 20061 (D.Idaho July 7, 2000). *Id.* In both cases, the court granted class certification of a class bringing claims under the Little Tucker Act, 16 U.S.C. § 1241 (2000). 196 F.R.D. at 470; No. CV 99–324–S–MHW, 2000 WL 1460801, at *15, 2000 U.S. Dist. LEXIS 20061, at *43. Plaintiffs claim that these two cases are quite analogous and support class certification under Rule 23(b)(3). The court disagrees.

In both *Hash* and *Bywaters*, the district court was confronted only with claims brought under the Little Tucker Act. Indeed, the plaintiffs in both cases filed suit "as the result of *the uniform application of a single federal statute to a single rail line.*" *Bywaters*, 196 F.R.D. at 469 (empha-

sis added) (quotation omitted). Here, Plaintiffs have sued under a single federal statute: RICO. Plaintiffs, however, have also brought divergent state law claims. Accordingly, the court finds that additional concerns exist in this case that were not present in either *Hash* or *Bywaters*. These cases are consequently inapposite.

So too are the settlement cases on which Plaintiffs rely. In a class settlement case, the court need not determine whether a lawsuit would be manageable under Rule 23(b)(3) because no trial will occur. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Here, however, the court must examine whether class-wide adjudication of Plaintiffs' claims is feasible and whether the class action is the superior procedural device under Rule 23(b)(3). *Castano*, 84 F.3d at 747–48. Thus, class settlement cases are also inapplicable.

**30.** *See* Representative Pls.' Am. and Consol. Mot. for Class Certification and Supporting Mem. of Law at 35–37; Representative Pls.' Reply Br. in Support of Their Mot. for Class Certification at 15 (Dkt.# 265).

viewed the record in this case, the court finds this record insufficient to decide this issue one way or the other.

It is apparent, however, that Plaintiffs seek actual and treble damages on nine counts of the RICO statute, actual and punitive damages on their state law claims, and attorneys' fees. Representative Pls.' Original Consol. Class Action Compl., ¶¶ 14.2–14.7. If a class member prevailed on these claims individually, he or she could, depending on the value of the land and the number of linear feet of fiber optic cable that traverses the land, recover a substantial amount of damages. Because the court cannot conclude that Plaintiffs' potential damages are insubstantial, this case is distinguishable from those cases deemed negative value lawsuits by courts in this circuit.[31]

Individual issues predominate over common issues in this case. Thus, class certification would result in an unmanageable lawsuit. Adjudication of the claims of at least five hundred landowners residing in three states, each of whom brings divergent, varying claims under the laws of three states and the RICO statute and seeks actual and punitive damages on those state law claims, would constitute a very difficult task. The inefficiencies and problems that would result from certifying Plaintiffs' claims would prevent the court from thoroughly and sufficiently considering Plaintiffs' claims without elevating individual issues over common issues. *See Hallaba*, 196 F.R.D. at 642; *cf. In re Monumental Life Ins. Co.*, 365 F.3d at 415–16, No. 02–30540, 2004 WL 718806, at *5 ("Where the need to address the merits of individual claims requires separate hearings, the efficiency gained by class litigation is lost."). The class action is not the superior procedural device to resolve Plaintiffs' claims.

## 2. COMPOSITE CERTIFICATION

■ Plaintiffs aver that the court can "certify the class under Rule 23(b)(2) on liability but provide class members with Rule 23(c)(2)(B) notice and the right to opt out on damages issues." Representative Pls.' Supp. Mot. for Class Certification at 4 (citation omitted). Thus, Plaintiffs ask the court to certify the class under Rule 23(b)(2) on liability and, in turn, certify the class under Rule 23(b)(3) on damages. *Id.* This approach, more commonly known as composite certification, was approved by the Eastern District of Virginia in *Fisher v. Virginia Electric & Power Co.*, 217 F.R.D. 201, 226 (E.D.Va.2003) and deemed permissible by the Fourth Circuit in *Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 438–43 (4th Cir.2003).

Plaintiffs claim, correctly, that composite certification is permissible in this circuit. Representative Pls.' Reply Br. in Support of Their Mot. for Class Certification at 11. Moreover, Plaintiffs contend that composite certification is appropriate in this case. Relying on *Fisher*, Plaintiffs assert that granting composite certification under Rule 23 will best serve the ends of justice. Representative Pls.' Supp. Mot. for Class Certification at 8.

District courts in this circuit, however, grant composite certification only sparingly. *Castano*, 84 F.3d at 745 n. 21; *see, e.g.,*

---

31. For example, in *In re Monumental Life Insurance Co.*, 365 F.3d at 411–12, No. 02–30540, 2004 WL 718806, at *1, plaintiffs claimed that three life insurance companies "charg[ed] higher premiums to blacks in the sale of low-value life insurance." Each low-value life insurance policy had a face value of $2000 or less and required very low monthly premiums. *Id.* at 414–15, 2004 WL 718806, at *4 & n. 4. Among other things, the plaintiffs sought "restitution of past premium overcharges or benefit underpayments." *Id.* at 412–13, 2004 WL 718806, at *2. The court began its discussion by noting that the case seemed to be the prototypical negative value suit. *Id.* at 411–12, 2004 WL 718806, at *1 ("In what may be the ultimate negative value class action lawsuit, . . . ." (footnote omitted)).

In *Bertulli*, 242 F.3d at 293, pilots sued "their pilots' association and airline claiming injury suffered as a result of seniority lost when the pilots' association and airline changed the seniority rankings of their pilots." The court in *Bertulli* noted that damages would be nominal for most class members. *Id.* at 299. Even successful class members would recover $29,000 at most. *Id.* The court consequently found that the class action qualified as a negative value suit and concluded that the plaintiffs had met the superiority requirement of Rule 23(b)(3). *See id.* ("A large group of plaintiffs, each with small damages, seeking injunctive relief that benefits the group as a whole, is the prototypical class.").

*Burrell v. Crown Cent. Petroleum, Inc.*, 197 F.R.D. 284, 292 n. 5 (E.D.Tex.2000) ("[T]he court is simply not comfortable with what amounts to piecemeal certification of a class action."). As this circuit stated in *Castano*,

A district court cannot manufacture predominance through the nimble use of subdivision (c)(4). The proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that *a cause of action, as a whole, must satisfy the predominance requirement of (b)(3)* and that *(c)(4) is a housekeeping rule* that allows courts to sever the common issues for a class trial.

84 F.3d at 745 n. 21 (emphasis added) (citations omitted). Thus, each of Plaintiffs' causes of action, *as a whole*, must clear the predominance threshold for the court to grant composite certification for those causes of action. *Id.*[32] This rule exists to prevent class plaintiffs from avoiding the predominance requirement of Rule 23(b)(3). *See id.; see also Allison*, 151 F.3d at 422.

Plaintiffs correctly note that a lawsuit, as a whole, need not satisfy Rule 23(b)(3) as a prerequisite to composite certification. Representative Pls.' Reply Br. in Support of Their Mot. for Class Certification at 12. Here, however, none of Plaintiffs' causes of action, as a whole, satisfy Rule 23(b)(3)'s predominance requirement. The lack of a class-wide damages formula, the proximate cause requirement for Plaintiffs' RICO claims, and the limitations question prevent the court from finding that common issues predominate over individual issues for any of Plaintiffs' claims. Thus, composite certification is inappropriate. *Allison*, 151 F.3d at 422; *Castano*, 84 F.3d at 745 n. 21.

### III. CONCLUSION

"Class actions are intended, among other things, to preserve judicial resources and to provide legal relief to those who otherwise might not receive it." *Sembach v. McMahon Coll., Inc.*, 86 F.R.D. 188, 194 (S.D.Tex.1980).

Class certification in this case, however, would accomplish neither goal. Consequently, Representative Plaintiffs' amended and consolidated motion for class certification and Representative Plaintiffs' supplemental motion for class certification are hereby DENIED.

It is so ORDERED.

---

**32.** *See also Smith v. Texaco, Inc.*, 263 F.3d 394, 409 & n. 18 (5th Cir.2001), *opinion withdrawn and appeal dismissed*, 281 F.3d 477, 479 (5th Cir.2002); *Allison*, 151 F.3d at 422. A cause of action is a "[m]atter for which action may be maintained." BLACK'S LAW DICTIONARY 221 (6th ed.1990); *see also id.* at 247 (defining "claim" to mean "[a] cause of action"). Thus, the entire *lawsuit*, as a whole, need not clear the predominance threshold for the court to grant composite certification. *Castano* demonstrates that district courts must examine whether composite certification is permissible on a claim-by-claim basis. *See* 84 F.3d at 745 n. 21.